**INTERNATIONAL BROTHERHOOD OF TEAMSTERS, CHAUFFEURS, WAREHOUSEMEN AND HELPERS OF AMERICA, Appellant,**

v.

**W. Willard WIRTZ, Secretary of Labor, Appellee.**

**No. 18769.**

United States Court of Appeals
District of Columbia Circuit.

Argued Jan. 13, 1965.

Decided April 29, 1965.

Mr. Herbert S. Thatcher, Washington, D. C., for appellant.

Mr. Robert V. Zener, Attorney, Department of Justice, with whom Asst. Atty. Gen. John W. Douglas, Messrs. David C. Acheson, U. S. Atty., Charles Donahue, Sol., Department of Labor, James R. Beaird, Associate Solicitor, Louis Weiner, Deputy Associate Sol., and Alan S. Rosenthal, Attorney, Department of Justice, were on the brief, for appellee.

Before DANAHER, BURGER and McGOW-
AN, Circuit Judges.

BURGER, Circuit Judge.

The District Court on application of the Secretary of Labor ordered enforcement of a subpoena duces tecum issued by the Secretary directing International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, the "Teamsters Union" in ordinary parlance, to produce records containing information as to financial matters required to be reported under §§ 201(a) and 201(b) of the Labor-Management Reporting and Disclosure Act of 1959, 29 U.S.C. §§ 431(a) and 431(b). On this appeal the Teamsters Union challenges the power of the Secretary under Section 601 of the Act, 73 STAT. 539, 29 U.S.C. § 521, to subpoena records of a labor organization for the purpose of investigating, evaluating and publicizing the existence of alleged violations of Section 501(a) of the Act, 73 STAT. 535, 29 U.S. C. § 501(a), which imposes certain fiduciary duties upon officers, agents and other representatives of labor organzations, on the ground that the Secretary has no remedial or enforcement powers as to Section 501(a) violations.

Certain background facts are important. On May 11, 1964 the Secretary issued a press release stating that the Department of Labor had begun an investigation into the possible use of union funds by Appellant to pay legal fees incurred by James Hoffa, its president. The release also disclosed that sixteen members of a Teamsters Union local had complained that Hoffa had used union funds for private purposes in violation of Section 501. Additionally, the Secretary's announcement stated that the complaining local union members requested prompt investigation of the complaint and publication of the results of the inquiry.

The stated purpose of the challenged subpoena, issued three days later on May 14, was to implement an investigation to determine whether any person had violated or was about to violate any provision of the Labor-Management Reporting and Disclosure Act of 1959 (except Title I and amendments made by the Act to other statutes).[1]

Shortly after the Secretary's announcement of his investigation, six members of the same Teamsters Union local referred to in the press release brought suit on behalf of the union and its members against various union officers, including James Hoffa, charging that union treasury funds had been wrongfully diverted by the union to pay legal expenses of Hoffa and other union officials in defense of various criminal prosecutions and demanding an accounting for and restitution of the diverted funds to the union. The action was brought under Section 501(b) of the Labor-Management Re-

---

[1]. Thus, it will be seen that the scope of the subpoena is commensurate with the Secretary's power under the Act. Section 601 of the Act provides as follows:

(a) The Secretary shall have power when he believes it necessary in order to determine whether any person has violated or is about to violate any provision of this Act (except title I or amendments made by this Act to other statutes) to make an investigation and in connection therewith he may enter such places and inspect such records and accounts and question such persons as he may deem necessary to enable him to determine the facts relative thereto. The Secretary may report to interested persons or officials concerning the facts required to be shown in any report required by this Act and concerning the reasons for failure or refusal to file such a report or any other matter which he deems to be appropriate as a result of such an investigation.

(b) For the purpose of any investigation provided for in this Act, the provisions of sections 9 and 10 (relating to the attendance of witnesses and the production of books, papers, and documents) of the Federal Trade Commission Act of September 16, 1914, as amended (15 U.S.C. 49, 50), are hereby made applicable to the jurisdiction, powers, and duties of the Secretary or any officers designated by him.
73 STAT. 539, 29 U.S.C. § 521.

porting and Disclosure Act and the complaint alleged that the claimed diversion of funds violated Section 501(a) of the Act.

On the return date fixed in the subpoena, Appellant refused to deliver any records pending action on its request that the Secretary withdraw the subpoena. Its request was based primarily on contentions (a) that the Secretary has no enforcement role or power to remedy violations of Section 501(a) and hence his investigatory powers under Section 601 do not extend to inquiry into violations of Section 501(a); (b) that a civil action had been brought by members of Teamsters Local 107 who allegedly were among those whose complaints to the Secretary led to issuance of the subpoena and that the Secretary is without power so to assist private litigants for whom all discovery procedures of the Federal Rules of Civil Procedure are available; (c) that even if the Secretary has such powers he may not use them when union members have not exhausted their rights to examine union records on demand; (d) that the subpoena is oppressive, burdensome and duplicitous.

The Solicitor of Labor on behalf of the Secretary then advised Appellant that the scope of the demand would be reduced to cover only the period from January 1, 1962 to a current date; the original subpoena was withdrawn and an amended subpoena issued. On June 1, 1964 in a hearing on the return of the new subpoena, Appellant, while still challenging the Secretary's powers, offered to comply with the demands if the Secretary would give assurances not to make any public disclosure of findings as to the expenditures of Teamsters Union funds to pay litigation expenses of criminal proceedings against Hoffa. The Secretary declined to give any such assurances and proceeded in the District Court for enforcement of the subpoena. The District Court ordered enforcement and granted a stay pending resolution of this appeal.

The contentions on appeal are essentially those urged unsuccessfully on the Secretary, i. e., chiefly that the Secretary lacks power under the Labor-Management Reporting and Disclosure Act to investigate and publicize findings as to violations of Section 501(a) of the Act.

The powers of the Secretary under the Labor-Management Reporting and Disclosure Act are broad and, as with visitorial powers in other contexts, they are to be construed in such a way as to give effect to the purposes of the Act. That the Secretary's public announcement cites Section 501(a) as the basis of complaints by union members cannot in any sense limit the scope of his investigation.[2] An inquiry prompted by reports of violations in one area of the statutory coverage might reveal violations in other areas. Nor can the pendency of class actions brought by union members and aimed at the related objective of accounting and restitution operate to circumscribe the Secretary's powers.

It would be an anomaly if private persons, for whatever motives, could determine what the Secretary could or could not do with information which he secures in the exercise of his overseeing functions under the Act. The Secretary has the power under Section 601 to investigate and report to "interested persons or officials" concerning facts required to be reported under the Act, reasons for failure to report and "any other matter which he deems to be appropriate * * *." See note 1 supra. A basic purpose of the Act was to aid union members in securing information as to the financial affairs of their unions and the employment of union assets. The power to report to "interested persons" in addition to "officials" such as the Attorney General includes the power to inform the public at large and union members. To give the Act a lesser scope would be to lose sight of the fiduciary nature which

2. Indeed neither the press release nor the subpoena itself purports to limit the Secretary's concern to violations of Section 501.

Congress has attributed to the offices of union leadership.[3]

Congress afforded a broad range of remedies, civil and criminal, and authorized investigations as a means of aiding union members in pursuit of their remedies; there is nothing in the language of the statute, its history or the announced legislative purpose which should lead us to accept the Union's narrow reading of this remedial legislation.

■ It is not without significance that Congress considered and rejected a limitation on the Secretary's powers in the form of a requirement that the Secretary. first find probable cause to believe that violations had occurred before issuing a subpoena. See Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen and Helpers of America v. Goldberg, 112 U.S.App.D. C. 391, 303 F.2d 402 (1962), approving Goldberg v. Truck Drivers Local Union No. 299, 293 F.2d 897 (6th Cir.), cert. denied, 368 U.S. 938, 82 S.Ct. 379, 7 L.Ed. 2d 337 (1961). While Appellant does not here argue for such a requirement, we note Congress' rejection of a probable cause limitation as probative of its intent to confer broad investigative powers on the Secretary.

The public disclosure functions of Section 601 have a certain similarity of purpose with the disclosure concepts of the Securities and Exchange Act; to a degree each has as its purpose ventilation of facts in which the public at large as well as a particular segment—here union members—have a genuine interest. A labor union is not a private enterprise.

Congress seems to have thought that reporting and disclosure would serve a prophylactic function, deterring some of the corrupt practices and acts of untrustworthiness on the part of union officers which Congress had found prevalent, and would enable union members to govern their organizations more intelligently.

The objectives of the Act read as a whole do not warrant our reading into Section 601 the implied exception Appellant seeks to add to the exceptions therein expressed by Congress. The plain, unambiguous language of the statute renders resort to legislative history unnecessary as an aid to interpretation, but the language of one of the reports illuminates the legislative objectives:

> This provision in insures [sic] that union members will have all the vital information necessary for them to take effective action in regulating affairs of their trade union, *either through voluntary compliance of the labor organization with the reporting requirements* of the act *or as a result of investigation and reports by the Secretary of Labor*. The committee is confident that union members armed with adequate information and having the benefit of secret elections * * * would rid themselves of untrustworthy or corrupt officers. In addition, the exposure to public scrutiny of all vital information concerning the operation of trade unions will help deter repetition of the financial abuses disclosed by the McClellan committee.[4]

3. The union's position that the proposed investigation seeks information limited to Section 501(a) violations is without merit as without record support even if we assume the correctness of the legal conclusions the union would draw from such a state of facts. The Secretary's press release simply indicated what prompted his action, not the scope of his search. The subpoena itself is drawn as broadly as the Act will permit. Use of union funds to pay private bills of officers might violate both Sections 209 and 501(c). These provisions are *enforceable* by the Attorney General, but the Secretary is expressly given the enforcement-related role of supplying that official with pertinent evidence disclosed by investigations. 73 STAT. 540, 29 U.S.C. § 527. Moreover, the search could afford a basis for civil actions by the Secretary under Section 210. Thus the record will not support the assertion that the subpoena has nothing to do with the Secretary's enforcement duties: Appellant's legal argument lacks a factual underpinning.

4. S.REP.No. 187, 86th Cong., 1st Sess. 9 (1959), U.S.Code Congressional and Administrative News 1959, p. 2325. (Emphasis added.) Moreover, the Sen-

■ Appellant's next contention is that the Secretary may not use his investigatory power to furnish information to those local members who requested it, since certain of the latter allegedly have instituted an action under Section 501 (b), as an incident of the prosecution of which the normal discovery devices afforded by the Federal Rules of Civil Procedure are available to them. This contention, like that discussed above, suffers first from the fact that the record does not demonstrate the Secretary's sole or primary purpose to have been to come to the aid of any individual union members. And even if such a purpose can be assumed, there has been no showing that any of the six suing members was among the sixteen who called on the Secretary for aid. Assuming, *arguendo*, that these facts were shown, we find Appellant's argument untenable. The institution of action by union members does not deprive the Secretary of his broad powers to deal with facts involved in such litigation.

■ Appellant's final contention that the union members failed to exhaust available remedies by first requesting the desired information from the Union before petitioning the Secretary must fail for a variety of reasons. As just noted, the Secretary's powers are independent of the action or inaction of union members. Nothing in the Act expressly requires members to ask the Union for information as a condition to receiving information secured by the Secretary under the statute; moreover, there is little

reason to assume that the Union will give to its "hostile" members the very information which it refuses to give the Secretary of Labor unless the Secretary agrees not to reveal it to the public or "interested persons." Certainly one purpose served by granting the Secretary independent powers is to make sure that relevant information can be secured in the public interest if members are too complacent or too cowed to ask the union for it.

Even if we assume that an action by members under Section 201(c) requires a prior demand [5] on the union, that cannot affect the Secretary's broad powers under the Act. We read the Act as authorizing action on a broad front to accomplish the objective of enforcing recognition of the essentially fiduciary relationship between union officials on the one hand and members on the other, with all the duties and obligations which follow. *Cf. e. g.*, Int'l Union of Electrical, R. & M. Workers etc. v. N. L. R. B., 113 U.S.App.D.C. 342, 346, 307 F.2d 679, 683, cert. denied, 371 U.S. 954, 83 S.Ct. 307, 9 L.Ed.2d 270 (1962). See generally Note, The Fiduciary Duty of Union Officers Under the LMRDA, 37 N.Y.U.L. REV. 486 (1962).

■ Since we conclude that the Secretary had power to issue the subpoena, the only remaining issue raised by this appeal is whether the District Court abused its discretion in ordering enforcement of the subpoena on the record before it. We hold that it did not.

Affirmed.

---

ate Report indicates that one purpose of reporting and publicity is to facilitate legal actions by union members. *Id.* at 16.

5. See Corratella v. Roberts, 56 L.R.R.M. 2068 (D.Conn.1964).