**FRUIT AND VEGETABLE PACKERS AND WAREHOUSEMEN LOCAL 760, and James Farrington, Appellants,**

v.

**Terry C. MORLEY, Vincent Kuntz and Lumina Brownlee, Appellees.**

**No. 21327.**

United States Court of Appeals Ninth Circuit.

May 3, 1967.

Richard P. Donaldson, Bassett, Donaldson & Hafer, Seattle, Wash., for appellants.

Ronald F. Whitaker, Walters & Whitaker, Yakima, Wash., for appellees.

Before MADDEN, Senior Judge, U. S. Court of Claims,* and BARNES and DUNIWAY, Circuit Judges.

BARNES, Circuit Judge.

Appellees are members of the appellant union, of which appellant Farrington is secretary-treasurer. As required by 29 U.S.C. § 431(b), the union, by its secretary-treasurer Farrington, filed financial statements (called LM-2 reports) with the government for the years 1962, 1963 and 1964, copies of which were obtained by appellees. At an open union meeting in 1965 Farrington was asked what his salary was but refused to disclose it. Thereafter the appellees, on July 16, 1965, sent a letter to the union reading as follows:

"Gentlemen:

"We have obtained copies of the LM-2 reports for the years 1962, 1963 and 1964 filed by Teamsters Local 760.

"We, the undersigned, request the right in person and with an accountant of our own choosing, to examine all supporting documents relating to salaries and expenses paid to officers and employees of Teamsters Local 760 within the years 1962, 1963 and 1964, and all supporting documents relating to loans made by Teamsters Local 760 during the years 1962, 1963 and 1964. In addition, we request the right, in person and with an accountant of our own choosing, to examine all supporting documents relating to receipts and disbursements during the years 1962, 1963 and 1964."

The letter was received but never responded to in any way. The information requested has not been made available to appellees.

Unsuccessful in their request for the information, appellees filed suit in the district court to compel the union and Farrington to permit examination of the records supporting the LM-2 reports. Jurisdiction below was challenged, it being alleged to rest on 29 U.S.C. § 431(c):

"Every labor organization required to submit a report under this subchapter shall make available the information required to be contained in such report to all of its members, and every such labor organization and its officers shall be under a duty enforceable at the suit of any member of such organization in any State court of competent jurisdiction or in the district court of the United States for the district in which such labor organization maintains its principal office, to permit such member *for just cause* to examine any books, records, and accounts necessary to verify such report. The court in such action may, in its discretion, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." (Emphasis added.)

The court found that it had jurisdiction, entered an order that the examination be permitted and awarded appellees attorney's fees and costs of the examination. We have jurisdiction of the appeal under 28 U.S.C. § 1291.[1]

Appellants raise five specifications of error:

1. The court below erred in failing to hold that appellees' demand to inspect the union's records was insufficient because appellees did not indicate to the union any "just cause" for the inspection;

2. The court below erred in holding that appellees had "just cause" for the inspection;

3. The court below erred in failing to hold that appellees' action was pre-

---

* J. Warren Madden, sitting by designation of the Chief Justice.

1. Appellants on this appeal apparently concede the jurisdiction of the district court. (Appellants' Brief, p. 1.)

742

mature and that appellees were required to exhaust their remedies within the union before seeking judicial relief;

4. The court below erred in failing to hold that appellees' action to compel disclosure of the records substantiating the union's 1962 LM-2 report was barred by the Washington two-year statute of limitations; and

5. The court below erred in ordering the appellant union to pay appellees' attorney's fee and the costs of examination of the union's records.

We will treat them in the order presented.

I. *The Demand.*

■ Appellants argue that the demand presented to the union was required to specify the "just cause" of the proposed examination before the union was under a duty to submit to that examination. The district court concluded to the contrary, that the surrounding facts and circumstances are to be considered in determining whether just cause was shown. We agree with the district court. Opinion as to what constitutes "just cause" may differ. It is an amorphous concept. It may mean one thing to a union member, and something entirely different to a union officer. Yet the statutory requirement must be judged by the objective standard of the reasonable man. It is on that basis that we proceed.

■ The statute itself does not specify who must make a showing of just cause or the lack thereof, when it is to be made, or how it is to be made. Nor does it require any demand, prior to suit, written or otherwise. Nevertheless, we can assume that the party seeking to examine the union records has the burden of showing he has just cause. Just cause is in the nature of a prerequisite to the right to examine, and we can rely upon the general rule that the burden is upon the person seeking to enforce a right to show that all of the prerequisites and conditions precedent have been met.

Ascertaining upon whom the burden falls, however, does not limit the manner

in which that burden can be sustained. Congress in its wisdom has not fixed any particular mode of demonstrating just cause, nor any particular time for the doing of it. Congress could have required a written demand setting forth the alleged just cause. It did not, and it is not our function to impose such limitations where Congress has not.

In Zastrow v. Teamsters, 56 L.R.R.M. 2873 (Wis.Cir.Ct.1961), the court sustained the union's demurrer to a petition seeking to enforce certain members' examination rights. The court held that the union members must make a written demand upon his union which sets forth "(1) cause to examine; and (2) a statement linking records to a specific report." 56 L.R.R.M. at 2874. The court's sole authority for this result was the case of Henderson v. Sarle, 45 L.R.R.M. 3037 (N.Y.Sup.Ct.1960). There, without any supporting authority, the court said: "Such a duty [to permit examination] cannot arise until there has been a demand setting forth the cause and relating the books, records and accounts to a specific report." 45 L.R.R.M. at 3038.

■ Appellees correctly point out that we are not bound by this authority. We expressly disapprove of any absolute rule established by the *Zastrow* and *Henderson* cases. Congress when it established the members' right to examine the union records was fully aware of the circumstances in which this right would be exercised. Individual members, unschooled in the niceties of labor law, will request verification of certain items in the union reports. Often they will not even anticipate what form that verification will take. In our opinion it was never intended that the exercise of the right to inspection be restricted by requiring a demand with all the technical ritual of a formal pleading.

■■ Appellants direct our attention to the history of this legislation. When Senate Bill 1555 (which later became the Labor-Management Reporting and Disclosure Act of 1959, Pub.L. 86–257, 73 Stat. 519 (1959)) was on the floor of the Senate, Senator Goldwater offered

an amendment which would give members the unqualified right to examine union records. Senator Kennedy, fearing that an unqualified right of inspection would lead to harassment, objected to the amendment. As a compromise Senator Goldwater amended his amendment to provide for inspection for "proper cause," and, as amended, the amendment was adopted. Although this language was omitted in favor of the House version of "just cause", it seems clear that Congress designed the just cause requirement to prevent continuous and undue harassment, not to pose any barrier to a union member's honest inquiry into the supporting records. The just cause requirement must be read in a narrow sense when invoked to resist an examination which is admittedly not for harassment. Nor can we rule on such a requirement in a vacuum. The facts of each case vary. Here, one would think that ordinary courtesy required the union officers, if they suspected an improper motive or undue harassment through appellees' letter, to at least answer the members' letter, asking the members to state what their just cause was.

There are two further facts disclosed in the record which make this case unusual.

(1) The unanswered question at the union meeting preceding the letter having to do with the secretary-treasurer's salary; and

(2) The appellants' concession that the appellees in this case did have just cause to raise the admitted discrepancy between the statement and its supporting schedule with respect to the amounts paid to officers.

■ We hold that the just cause requirement of 29 U.S.C. § 431(c) need not be established in a written demand to the union or its officers for permission to examine records. It is sufficient if, at a time reasonably concurrent to the demand, be it written or oral, the union officers in charge of the records sought to be examined know, or should know, that the requesting member has just cause to seek examination.

■ The demand in this case did not set forth any facts which would constitute just cause. Appellants argue that the union has a right to have the just cause presented to it before the judicial process is invoked. The cases holding that a demand must be made support this position. See International Brotherhood of Teamsters, etc. v. Wirtz, 120 U.S.App.D.C. 346, 346 F.2d 827, 832 (1965) (assuming a demand is required), Coratella v. Roberto, 56 L.R.R.M. 2068, 2071, order withdrawn for reasons not material here, 56 L.R.R.M. 2668 (U.S. Dist.Conn.1964). We agree that it is only reasonable that the union have the first opportunity to consider any alleged just cause presented by its members.

■ That right of the union, however, to advance notice is not an absolute prerequisite to the jurisdiction of the district court. The statute does not make it so. It is only after reference to the right to enforce by suit is made that any reference to just cause occurs. Advance notice is a procedural step in enforcing the members' rights, designed to facilitate the recognition of the right without resort to the judicial process. It was a right possessed by the union, and one which could be waived. We are of the opinion that it was waived. Here the members presented a written demand to inspect the records. The union's answer was to ignore the demand. Had it wished to exercise its right to have a showing of just cause, the union should have asked the demanding members to allege such cause. To completely ignore the members' demand is inconsistent with the purpose of the union's right to first consider the just cause allegation. To ignore the members' demand is a reflection of the union officers' attitude that they are unconcerned with the demand, whether or not it is supported by just cause. We cannot lose sight of the relationship between a union officer and member. The officer is not the owner or monarch of the union. He is a trustee, a servant of the members' interests.

The union property, though entrusted to an officer's possession, belongs to the members. It is an abnegation of the officer's position of high trust and solemn responsibility to disdainfully neglect an application of this kind from a member, unless convinced it was absolutely without basis or merit. We conclude that any right the union had to be forewarned of the just cause for inspection was waived by the conduct of the union after receiving the demand. We therefore conclude that, within the facts and circumstances of this case, the demand was sufficient.

## II. *The Just Cause*

Beyond the question of the union's right to be first informed of the existence of that which a member may think is just cause, is the question of whether such cause in fact existed. Though the union might by its conduct waive the right to be first informed, it cannot alter the statutory structure which provides that enforcement shall be ordered only for just cause. The court below found that just cause existed, and we agree.

The standard for determining whether there was just cause is necessarily minimal. Just cause need not be shown beyond a reasonable doubt, nor by a preponderance of the evidence. It need not be enough to convince a reasonable man that some wrong has been done; it is enough if a reasonable union member would be put to further inquiry. Perhaps it will be that a certain item is disproportionately high, as in Rekant v. Rabinowitz, 194 F.Supp. 194 (E.D.Pa. 1961), and Coratella v. Roberto, supra, or that an officer contends that he did not incur the claimed expenses, as in Deacon v. Operating Eng'rs, Local 12, 52 L.C. 16,609 (Calif.Super.Ct. 1965). Irrespective of the nature of the asserted

cause, the test must be whether reason would require substantiation.

As mentioned above, at an open meeting of the union Farrington was asked what his salary was. He refused to answer. There was an admitted discrepancy between a statement and its supporting schedule, regarding the amounts paid to officers. The 1964 report shows a loan to Century Associated of $50,000, over half of the local's total assets, without conforming to the statutory requirement that the purpose of the loan be shown. (Plaintiffs' Exh. 1, p. 3; 29 U.S.C. § 431(b) (4).) These undisputed items are just cause for permitting an examination of the union's records.[2]

## III. *Exhaustion of Remedies*

The union contends that the district court could not grant the relief requested until the members had exhausted all of their intraunion remedies. To support this proposition it cites section 101(a) (4) of the Labor-Management Reporting and Disclosure Act of 1959 (now 29 U.S. C. § 411(a) (4)):

> "No labor organization shall limit the right of any member thereof to institute an action in any court, * * * *Provided,* That any such member may be required to exhaust reasonable hearing procedures * * * within such organization, before instituting legal or administrative proceedings against such organizations or any officers thereof: * * *."

Apparently the court below felt that the "exhaustion" requirement of § 411(a) (4) did not apply to a proceeding under § 431(c). Some courts would probably disagree. Harris v. International Longshoremen's Ass'n, Local 1291, 321 F.2d 801 (3d Cir. 1963). Contra, Coratella v. Roberto, supra.[3] In Edsberg v. Local

---

**2.** The district court apparently felt that Farrington's salary of $20,470 and reimbursed expenses of $6,272 in 1964 were high, and that the amount of expenses alone would be just cause. Though it might be that this expense item, standing alone, might be just cause, see Rekant v. Rabinowitz, 194 F.Supp. 194

(E.D.Pa.1961), we need not consider it since we have found ample cause in the items mentioned.

**3.** Detroy v. American Guild of Variety Artists, 286 F.2d 75, 81 (2d Cir. 1961), cert. denied 366 U.S. 929, 81 S.Ct. 1650, 6 L.Ed.2d 388 (1961), suggests that failure

Union No. 12 of International Union of Operating Engineers, 300 F.2d 785 (9th Cir. 1962), we accepted the policy that the courts should in most circumstances forbear in order to permit intraunion adjustment of difficulties. There may be strong support for the union's contention that § 411(a) (4) applies to proceedings under § 431(c), but a precise ruling on the question is not required in this case.

 In the *Edsberg* case we recognized that the exhaustion of intraunion remedies doctrine cannot apply unless there is available from the union a remedy which is neither uncertain nor futile. Inherent in this proposition is the idea that to invoke the exhaustion principle the union must show that there was a procedure available to the members within the union structure reasonably calculated to redress the particular grievance complained of. "Where a union moves to dismiss the complaint, it should place before the court *facts* establishing that union remedies are available to the plaintiff and that plaintiff has neglected to use them." Forline v. Helpers Local No. 42, 211 F.Supp. 315, 317 (E.D.Pa.1962) (emphasis by the court).[4] It should be noted that § 411 (a) (4) allows only "reasonable" hearing procedures to bar court action.

In the present case the union's argument on exhaustion of intraunion remedies is premised on its assertion that charges could have been filed against Farrington under Article XIX, Section 6 of the International Constitution of the Teamsters Union. (Def. Exh. 1, pp. 107–108.) That section lists certain breaches, none of which are involved here, for which a member or officer can be tried by the union. There is language that the list is not exclusive, but Section 1(a) of Article XIX indicates that filing charges is a remedy for offenses against the Teamster Constitution.

 The duty to permit examination arises elsewhere. It is placed upon union officers by Act of Congress. The union provides remedies for violation of its own rules, not, necessarily, for violation of the laws of the United States. Without any showing that there was some procedure, neither uncertain nor futile, by which the appellees might have redressed the violation of their statutory right to inspect the union records, they cannot be barred from the courts for failure to exhaust intraunion remedies.

### IV. *The Washington Statute of Limitations*

The union advances the contention that this action is in part barred by the Washington statute of limitations, Rev.Code of Wash. § 4.16.130: "An action for relief not hereinbefore provided for, shall be commenced within two years after the cause of action shall have accrued." As to the 1962 records, the union contends that the cause of action arose on the April 1, 1963 filing date.

Judge Ely, speaking for this court in International Union of Operating Engineers, etc. v. Fischbach and Moore, Inc., 350 F.2d 936 (9th Cir. 1965), cert. denied sub nom. C. D. Draucker, Inc. v. International Union of Operating Engineers, etc., 384 U.S. 904, 86 S.Ct. 1336, 16 L.Ed.2d 358 (1966), held that actions for damages under the Labor-Management Reporting and Disclosure Act of 1959, particularly § 303 thereof (29 U.S. C. § 187), are controlled by the state statute of limitations. The rationale of that decision was that since Congress had indicated no time limit, the Rules of Decision Act (28 U.S.C. § 1652) required reference to the state law. Ap-

---

to exhaust intraunion remedies is not a bar unless the available remedy has been specifically brought to the attention of the complainant.

4. There is some authority for the proposition that failure to exhaust intraunion remedies is an affirmative defense so

that the union has the burden of showing the existence of adequate procedures. Murphy v. International Brotherhood of Teamsters, 56 L.R.R.M. 2885 (W.D.Ky. 1964). Contra, under the law of New York, Henderson v. Sarle, 45 L.R.R.M. 3037 (N.Y.Sup.Ct.1960).

pellants argue that *Fischbach* and *Moore* is controlling here; Congress imposed no time limit, so the law of Washington applies. Appellees contend that Congress, in requiring that supporting records be kept for five years (29 U.S.C. § 436), in effect established a five-year statute of limitations for actions under § 431 (c).

■ The bar of a statute of limitations is an affirmative defense, as appellants noted in their answer (C.T. pp. 8–9). They were thus required to prove every element of the defense. Bellingham Securities Syndicate, Inc. v. Bellingham Coal Mines, Inc., 13 Wash.2d 370, 125 P.2d 668 (1942). The only statute which they allege as a bar is the Washington statute quoted above. We find that under Washington law the cause of action accrues when all of the conditions precedent have been met. Washington Security Co. v. State, 9 Wash.2d 197, 114 P.2d 965, 135 A.L.R. 1330 (1941). Where the condition precedent to bringing an action is the making of a demand, the period runs from the time when it could first have been made. Jones v. Jacobson, 45 Wash.2d 265, 273 P.2d 979 (1954); Edison Oyster Co. v. Pioneer Oyster Co., 22 Wash.2d 616, 157 P.2d 302 (1945). In this case, under the statutory requirement of just cause, demand could not have been made until the appellees had just cause. It was incumbent upon the appellants to prove this element, which they did not. They seem to suggest that the right of action could not have accrued later than the last day for filing the reports in question. (Appellants' Brief, pp. 28–29.) But it was their burden to prove the time when the appellees actually had just cause, not when they might have.[5] Having failed to prove this element, the action is not barred by the Washington statute.

■ We deem it advisable to point out that our resolution of the question of the effect of the Washington statute is not a decision that state statutes of limitations control actions based on 29 U.S.C. § 431(c), nor does it foreclose the possibility that 29 U.S.C. § 436 established a five-year statute of limitations for such actions. Our decision goes only as far as it must, that appellants' affirmative defense is not valid for failure to prove a necessary element of that defense.

V. *Attorney's Fees and Costs of the Examination*

■ The statute which creates the cause of action vests the district court with discretion as to the award of an attorney's fee. 29 U.S.C. § 431(c). We find no abuse of that discretion and affirm that award. However, there is no statutory authority for awarding the costs of examination.[6] We therefore order the district court's order modified to delete the award of the costs of examination. In all other respects we affirm.

Order, as modified, affirmed.

DUNIWAY, Circuit Judge.

I concur in the decision, but not in all of its reasoning.

1. *The demand.*

As the opinion of my Brother Barnes points out, the statute does not require any demand. I agree, and I conclude from this that the suit could have been filed without the making of any demand. The suit itself is a demand. In such a suit, the plaintiffs would have to allege, as they do here, and they would have the burden of proving, that they had just cause. That is the only protection against harassment that Congress has given the union. Although there are many exceptions, particularly in the field of contracts, the general rule is that if A has a cause of action against B, he need not first make a demand

---

5. Indeed, appellants continue to take the position (in their briefs, though not at oral argument) that there was no just cause. If so, the period of limitations could not yet have begun to run, much less have expired.

6. There is authority for an award of the costs of the action, but no such award was made here.

upon B that B perform before he can sue B. He can simply file suit if he chooses to proceed in that way. Yet we know that a lawyer who is retained by A to sue B will usually first communicate with B, or with B's lawyer if he is known to have one, to see whether the matter can be disposed of without suit. Presumably, that will occur in most cases arising under section 431(c). But the decision as to whether or not to communicate with a prospective defendant before suit is filed is normally left by the law to the judgment of the plaintiff and his lawyer; it is not usually a condition to the right to sue. I would not impose such a condition here, when Congress has not done so.

I therefore express no opinion as to the sufficiency of the demand, because I think that none is required. I thus agree with my Brother Barnes in disapproving of the decisions in Zastrow v. Teamsters and Henderson v. Sarle, cited by him. I also disapprove of the decisions in International Brotherhood of Teamsters, etc. v. Wirtz and Coratella v. Roberto, also cited by my Brother Barnes, insofar as they suggest that a demand is a condition precedent to the right to sue.

2 & 3. *Just Cause and Exhaustion of Remedies.*

I agree with my Brother Barnes that just cause has been shown, and that the doctrine of exhaustion of internal union remedies is not applicable under the facts shown here. If there were an adequate intra-union remedy, the result might be different.

4. *The Washington Statute of Limitations.*

I would hold that the Washington statute of limitations does not apply, because Congress has provided for a time during which records, such as are here involved, must be kept and be available for examination. Section 206 of the Act (29 U.S. C. § 436) reads:

"Every person required to file any report under this subchapter shall maintain records on the matters re-quired to be reported which will provide in sufficient detail the necessary basic information and data from which the documents filed with the Secretary may be verified, explained or clarified, and checked for accuracy and completeness, and shall include vouchers, worksheets, receipts, and applicable resolutions, *and shall keep such records available for examination for a period of not less than five years* after the filing of the documents based on the information which they contain." [Emphasis added.]

To me, this language indicates that Congress wanted to preserve the right of examination, by requiring preservation of the records for at least 5 years. Appellants point to one bit of legislative history that, they claim, shows that the section has a narrower purpose—to preserve the records for use in prosecutions for perjury. They rely upon a statement by Senator Goldwater, a portion of which is:

"The Senate Bill as passed merely required the preservation of these basic records under conditions and for periods of time prescribed by the Secretary. The Landrum-Griffin bill, as well as the conference report, eliminate this discretionary authority of the Secretary and lay down a flat and unequivocal order, which permits of no exceptions, that they be kept available for at least 5 years. The 5-year period coincides with the length of the statue [sic] of limitations for criminally prosecuting acts of perjury under Federal law." [Legislative History of the Labor Management Reporting and Disclosure Act of 1959, Titles I–VI, p. 625.]

It may well be that the five year period was chosen for the reason stated by the Senator. But the language of the section is far broader than that. I think that one of its purposes is to safeguard the union members' right of examination under section 431(c). The value of this safeguard can be drastically curtailed if state statutes of limitations, providing for a shorter period than five years (here

the Washington statute provides for two years), are applied to those rights. I would not thus curtail them.

I express no opinion as to whether such a suit as this could be commenced more than five years after the filing of the pertinent LM-2 report.

I concur in the judgment.