**UNITED STATES of America**

v.

**E. Wharton SHOBER, George L. Guerra and John P. Dixon, Defendants.**

**Crim. No. 78-312.**

United States District Court,
E. D. Pennsylvania.

March 18, 1980.

Frank H. Sherman and Peter J. Smith, Asst. U.S. Attys., Philadelphia, Pa., for the Government.

Richard A. Sprague, Joan A. Zubras, Philadelphia, Pa., for defendant Shober.

James C. Schwartzman, Philadelphia, Pa., for defendant Dixon.

J. Shane Creamer, Philadelphia, Pa., for defendant Guerra.

## BENCH OPINION

TROUTMAN, District Judge.

In this somewhat complex and long protracted criminal case, the Court was in the early stages thereof faced with scores of pretrial motions, upon the disposition of which the trial has been repeatedly continued and postponed pending the conclusion of criminal proceedings in another district involving a defendant who is allegedly a potential witness in this case, but who, it was represented, refused to testify pending the resolution of charges which were the subject of an indictment filed in that district. Those charges were resolved and that case terminated the last week in February 1980, paving the way, it seemed, for the early trial of this case commencing March 18, 1980.

Coincidentally with the disposition of said case, we became aware of the recent decision of the Third Circuit Court of Appeals in the case of *Government of the Virgin Islands v. Smith*, 615 F.2d 964, dated February 5, 1980, giving this Court for the first time in this Circuit the express authority to grant judicial immunity to a potential witness for the defendant upon the defendant's meeting certain "standards" in an evidentiary hearing to be provided by the Court.

The Circuit Court also treated at length the somewhat parallel doctrine of statutory immunity, leading the defendants to renew motions, previously filed and denied, seeking statutory or judicial immunity for certain witnesses, pursuant to an evidentiary hearing as directed by the Circuit Court.

To hopefully allow time for the presentation and disposition of such motions, the Court again postponed the trial to May 14, 1980, the first available date, by reason of the engagement of certain counsel in other specially listed criminal cases, and the Court immediately scheduled an evidentiary hearing for March 12, 1980.

At that hearing last week, the Government objected at the very threshold to an evidentiary hearing, contending that same should await the conclusion of the Government's case at the time of trial, that being, it was contended, the earliest date on which the "availability" of such witness or witnesses for trial could be determined, "availability" being one of the standards enunciated by the Circuit Court.

The Government further contended that trial, at least to the conclusion of the Government's case, is essential to the determination of other enunciated standards, such as whether such testimony will be "clearly exculpatory" and "essential to the defendant's case."

This trial having already been long delayed, a new trial date having been fixed, there being no certainty as to the time required by an evidentiary hearing and the resolution of the issues there raised, desiring not to delay the trial once commenced and thus impose upon the jury the resulting burden upon its time and resources, we denied the Government's motion and proceeded to hearing.

The defendants, the movants, offered various documentary evidence including a letter from counsel for one of the potential witnesses. Additionally, counsel for another potential witness testified as to his belief concerning the availability of the witness, the exculpatory nature of his testimony and other matters. He also testified as to his "impression" that the Government intends to prosecute his client, the witness, at the conclusion of the instant case. Thus supporting defendant's contention that immunization is necessary to the appearance of such witness. It is doubtful that such testimony "clearly identified" the testimony of the witness.

■ As to the above-mentioned letter from counsel for another witness, a review thereof suggests that the witness had made a public statement "denying culpability with respect to matters" contained in the

indictment in this case, suggesting by inference only that the witness' testimony would exculpate the defendant or defendants in the instant case. The letter, although attesting to the innocence of the witness, does not clearly state that the defendant was not involved, although that conclusion could conceivably follow.

Moreover, the communication was not apparently based upon any recent conversation with the witness, as the author said therein, "I know of no reason why (the witness) will or should recede from his public statements." Such communication did not approach the task of "clearly identifying" the testimony of the proposed witness, and we so held.

Additionally, the letter pointed out the existence of potential or additional roadblocks to the appearance of the witness, including a "privilege" incident to the Speech or Debate Clause of the United States Constitution, raising still another issue in this case, particularly as to the "availability" of the witness.

■ Counsel for the defendants also sought to call Government's trial counsel to the witness stand to determine whether the Government will grant statutory immunity to the witnesses, and if not, why not, and for other undesignated purposes.

Government counsel responded that the Government would not grant immunity, but refused to state the reason for such denial.

We refused defendants' counsel the right to call Government counsel to the stand, finding nothing in the *Virgin Islands* case to suggest that the extraordinary remedy of immunity justifies the extraordinary procedure here attempted.

■ Certainly, the trial court has a substantial interest in eliminating, if not the duty to eliminate, situations which may result in the disqualification of trial counsel, either for the defendants or the Government, especially in a case in which trial has so long been delayed and in which we may hopefully be reaching trial within the near future.

At the conclusion of the hearing, the Government offered no evidence. It argued that the application for immunity is premature and should await the conclusion of the Government's case at trial, and that the defendants had made an "insufficient showing" of the need for immunity.

On the contrary, counsel for the defendants vehemently argued that they had "proffered testimony" and had made a "prima facie showing" within the meaning of those terms as used in the *Virgin Islands* case, and that having met the "standards," the Court should either direct "statutory immunity" or grant "judicial immunity."

■ Desiring not to delay the disposition of the motions and thus perhaps delay the trial, we ruled from the Bench, denying the motion for statutory immunity with prejudice. We did so because from the inception of this case statutory immunity has been sought precisely on the grounds alleged at the March 12 hearing, yet we have been unable to find "prosecutorial misconduct" or "Government decisions made with the deliberate intention of distorting the fact-finding process," as expressly required by the *Virgin Islands* case, and it is the defendants' burden to so establish.

However, as to the application for judicial immunity, we felt otherwise. We felt that defendants had at least taken a first step in the direction of establishing the basis for an order of judicial immunity, but found and concluded that the testimony of counsel for one witness and the communication from counsel for another witness did not meet the burden resting upon the defendants.

Recognizing their opportunity to make a proper showing as late as the conclusion of the Government's case at trial, as contended by the Government, we denied the motion for judicial immunity without prejudice.

Immediately upon the announcement of the Court's ruling, but following adjournment, counsel for defendants requested further hearing, which was immediately fixed for today, Tuesday, March 18, 1980, so as not to delay ultimate trial as scheduled.

It should be noted that in the *Virgin Islands* case the Government held the witness either in custody or in sequestration and thus exercised what the Court described as an "exclusive proprietary claim" to the witness, thus precluding the defendants from interviewing him, producing him at trial, or even using, at trial, the police statement taken from him.

Not so here. The Government has not interfered with defendants' access to the witnesses in question. It has merely failed to indict individuals allegedly involved in the transactions alluded to in the indictment, and has denied immunity, statutory or otherwise. This is a far cry from improperly exercising an "exclusive proprietary claim" to the witness. There is nothing in the *Virgin Islands* case and nothing in the law to date imposing upon the Government the obligation to voluntarily immunize a witness for the benefit of the defendant. Moreover, in such refusal, without more, we cannot find the "deliberate intention of distorting the judicial factfinding process," as contended by the defendants, or as required by the *Virgin Islands* case.

█ In passing, it should be noted that while the burden here rests upon the defendants, that burden need not be met by any prescribed standards, such as beyond a reasonable doubt, by a preponderance of the evidence, or even by establishing that what they seek is more likely so than not so. Rather, the *Virgin Islands* case speaks in terms of a "convincing showing" sufficient to satisfy the Court that the proposed testimony is both "clearly exculpatory" and "essential" to the defendants' case.

The *Virgin Islands* court refers alternatively to a "prima facie showing," a "convincing showing," but nowhere does the court define the term or terms used, nor does it give any guidance as to what is sufficient to constitute a "convincing showing."

The term "show" or "showing" is variously defined in various references as "to make evident or apparent," "to set forth in a statement," "to make evident or clear," "to allege, plead or present," "to establish by inference," "to give an explanation of," "to claim," "to make apparent or clear by evidence," or "to prove."

Depending upon the definition accepted for the purpose of determining the extent of the burden resting upon the defendants, the results can vary, and, at this point, we are given no guidance. In one instance, the term "to show" was held as meaning to "demonstrate." I refer there to the case of *Fruit and Vegetable Packers and Local 760 v. Morley,* 378 F.2d 738 (9th Cir. 1967).

A similar problem exists with respect to the term "proffered testimony." When is testimony properly "proffered," and what constitutes a "proffer?" Black's Law Dictionary (Fifth Edition) defines a "proffer" as "to offer or tender, as the production of a document and offer of the same in evidence." Here, the defendants, at the March 12, 1980, hearing did, in fact, "offer" the testimony of counsel for one potential witness and a letter from counsel for another. We then and there held that the defendants had not met the burden resting upon them, pointing out:

1. That we were unable to accept such proofs through communications from counsel, inhibited and strained as they necessarily must be by the attorney-client privilege which is so important to our criminal justice system, and must not be eroded in the future by demands placed thereon by proceedings such as these;

2. That the testimony of counsel presented, laced with honest uncertainties and impressions, and the letter communication of counsel supplemented by a newspaper clipping and raising collateral issues, such as the privilege incident to the Speech or Debate Clause of the United States Constitution, were insufficient to meet the burden; and,

3. That a more informed decision, perhaps supported by more direct evidence could better be made at a later date.

We erroneously stated that the *Virgin Islands* case involved the signed statement of the witness, whereas it, in fact, involved

his statement to the police, whether signed or unsigned, we do not know. Importantly, it involved his statement, as opposed to counsel's interpretation of such statement, inhibited and circumscribed by counsel's obligation to his client and the existence of the attorney-client privilege.

Additionally, it was clearly, if not admittedly, exculpatory, which conclusion cannot logically follow from the presentations at the March 12, 1980, hearing.

Similarly, in the *Chambers* case, cited in the *Virgin Islands* case, the witness was personally present, and his direct testimony available but for the state rules of evidence prohibiting same.

In no case has the approach to the "proffered" testimony been as far removed as at the March 12 hearing. As there stated, we do not fault counsel in their approach and efforts to comply with the standards of *Virgin Islands*, but found same insufficient and inadequate for the reasons stated.

Thus, we did not reach the Government's contention that compliance with the *Virgin Islands* standards cannot be met until time of trial, and more particularly, until the close of the Government's case. Such contention is not without merit, because whether the witness is physically and in person "available" at trial can only be literally determined when he, in fact and in body, appears at trial.

Similarly, whether his testimony is "exculpatory" or "clearly exculpatory" can be determined with absolute finality only when it is determined what the Government has, in fact, proven, as opposed to what is charged in the indictment.

Neither did we reach the Government's contention that only at the conclusion of Government's case and in the light of the testimony offered and admitted can it be determined whether the sought-after testimony of the immunized witness is "essential" to the defendants' case or merely "cumulative." Such contentions, however narrow, are not without merit. However, our concern must properly focus upon more than the availability of the witness, whether his testimony is essential, whether it is merely cumulative, et cetera. We must look beyond the limited societal interests articulated by the Government and weighing against the grant of immunity.

Actually, our proper concern has broader dimensions, including the accused's right to due process of law, for the parameters of the Fifth Amendment Due Process Clause form the matrix of the Court's power to fashion judicial immunity for a prospective defense witness. Accordingly, the contours of the Due Process Clause limit and define the exercise of that power and provide guidance in determining when an accused is entitled to have immunity granted to a prospective witness.

Assuming, for purposes of discussion and argument, that the accused has satisfied and met the *Virgin Islands* preliminary standards, Due Process then requires that the accused receive a trial that is fundamentally fair. To accomplish this goal, insofar as the Due Process issue is involved, the right should be afforded at a time when the accused can still marshal his resources to make the right actually, not just theoretically, a useful one.

To hold as a matter of law that the accused never has a right to conferral of immunity upon a witness until the close of the Government's case may reduce Due Process to an ethereal and theoretical principle with only rhetorical vitality. Access to an immunized witness prior to trial allows the accused an opportunity for sober reflection and careful preparation, which may be unavailable if the right is animated in mid-trial.

Timing of the right may be the critical ingredient which determines whether the accused will receive the form or substance of Due Process. Unconditionally preserving this right and seasoning his trial therewith may add little savor to the justice he deserves, if the potential of the right has become stale by the time he receives it.

Accordingly, where the accused can make a convincing showing prior to trial that the testimony of the proposed witness

meets the *Virgin Islands* standards, the Court need not wait until the close of the Government's case to confer immunity on the witness. Such an inference may understandably, but improperly, be drawn from our order of March 12, 1980, denying with prejudice defendants' motions for statutory immunity. Accordingly, that order will be amended, denying said motion, without prejudice.

■ We do not mean to say that the Government's position lacks cogency or merit. Circumstances may exist where judicial immunity to prospective witnesses could be properly conferred only after the close of the Government's case. But by the same token, circumstances in another case could indicate that conferring immunity to witnesses prior to trial would be the only alternative to guarantee the accused a fundamentally fair trial.

Or, circumstances may justify conferral of judicial immunity to one prospective witness prior to trial and deferring final decision concerning another witness until the close of the Government's case. Eschewing a mechanical rule commanding that such a decision must be made either before or during trial allows sufficient flexibility to accommodate the myriad complex of situations which may arise in the future and to balance the competing needs and interests of the witness, the Government and the accused.

With those comments, both historical and otherwise, we are thus brought to the point of considering the evidence presented here today.

As we indicated during oral argument, there is no reference in the indictment whatever to Ed Dixon, the potential witness sought by the defendant John P. Dixon. There is nothing in the indictment to indicate the Ed Dixon will be involved in the trial in any capacity, or that his testimony would be relevant, much less exculpatory and essential.

However, so-called 302 statements to the FBI disclose, as represented by counsel, that the Government's immunized witness Elko will, if his testimony at trial follows his 302 statements and his grand jury testimony, directly implicate Ed Dixon in the subject matter of the indictment.

Aware of this, Ed Dixon's statement submitted to the Court today, Exhibit 8, completely exculpates the witness as to the payments made unlawfully or pursuant to any scheme, as alleged in the indictment.

However, such statement does not negate the making of any payments to or the passage of any funds to, or exchange of funds with Elko. Rather, payments or exchanges of funds are explained on the basis of loans or other business transactions between Ed Dixon, Elko and others.

■ Regrettably, counsel have advised in the course of oral argument, after studying Elko's 302 statements and his grand jury testimony, that there are inconsistencies and contradictions therein. Thus, depending upon his testimony at time of trial, and depending upon the course which it takes, it is not possible today to determine conclusively and with finality that Ed Dixon's testimony will be clearly exculpatory, clearly essential, to the defense. Now, we are not here seeking to evade our responsibility today. Rather, we have concluded that today is not, in our opinion, the day when we can, on an informed basis, finally decide that the standards of the *Virgin Islands* case have been met with respect to the testimony of Ed Dixon.

While we are satisfied that the Circuit Court does, indeed, intend that judicial immunity shall become the subject of pretrial procedures, we conclude that it must be on the basis of more definitely determined facts, such as there existed, albeit on a post-trial basis. There will be cases where this is possible. Not so here, notwithstanding the total and unrestrained efforts of able counsel, whom we must necessarily and properly compliment in connection with the undivided efforts which they have devoted to this case.

■ Thus, although we shall once again deny the defendants' motions, without prejudice, we hasten to add that if, at trial,

Elko testifies in accordance with his 302 statements and implicates Ed Dixon as therein indicated, and does so under the grant of immunity by the Government, we shall most assuredly grant the said Ed Dixon judicial immunity at trial, barring intervening controlling precedent to the contrary or an unforeseen change in facts and circumstances. Counsel may be guided accordingly.

To today affirmatively grant judicial immunity at trial time would improperly deny this Court the opportunity to consider subsequent precedent, changes in facts and circumstances, all of which it is our duty to consider at trial, to afford all parties and witnesses the rights to which they are entitled at that time.

Now, as to the witness Flood, here we have no statement from him, no communication from him directly or indirectly, as we have in the case of Ed Dixon. We have a communication from his lawyer, and the benefit of certain excerpts from newspaper articles.

From either of these, or from the combination of them, we are honestly unable to determine with that degree of certainty which is required by the *Virgin Islands* case that his testimony will, in fact, be exculpatory.

Moreover, we have greater problems with his availability, in that there are various privileges which he may assert, and which it is suggested by his counsel he will assert. Again, subsequent developments to and at trial time may, indeed, indicate his availability, the exculpatory nature of his testimony, and general compliance with the *Virgin Islands* standards.

Therefore, in conclusion, we advise that we shall, one, amend our previous order of March 12, 1980, in which we denied the defendants' motions for statutory immunity, with prejudice, and shall, to the contrary, deny the motions for statutory immunity without prejudice.

As to the motions pending today, we shall deny the motions for judicial immunity, without prejudice, as we did a week ago, and shall deny the motions presented by the defendant Shober for judicial immunity or for alternative relief, again without prejudice.

I am grateful to counsel for staying this added length of time to allow me to state for the record the position of the Court only because it would take a far greater amount of time to write it up in a more formal, more presentable manner, and I seek not to delay the trial.

I might also add in conclusion, and with the greatest sincerity, that I have never seen counsel more devoted to a case. I have never seen counsel, either for the Government or the defense, cooperate in any greater manner with the Court in an effort to expedite the complex motions and matters which have been presented, and still at the same time seek to reach an early trial.