**Marsha SPINOWITZ, et al., Plaintiffs,**

v.

**John HERRITY, etc., et al., Defendants.**

**CV 87–3563 (RJD).**

United States District Court,
E.D. New York.

Nov. 5, 1987.

Clifton & Schwartz, New York City (Daniel E. Clifton, of counsel), for plaintiffs.

Sipser, Weinstock, Harper & Dorn, New York City (Belle Harper, of counsel), for defendants.

## MEMORANDUM AND ORDER

DEARIE, District Judge.

Plaintiffs, members of Local 101 of the Transport Workers Union of America, brought this action against three officers of Local 101. The complaint seeks the

right to inspect the financial books, records and accounts of the Local pursuant to § 201(c) of the Labor–Management Reporting and Disclosure Act of 1959, 29 U.S.C. § 431(c). Because plaintiffs feel the information sought could be important to their candidacies in an imminent union election, they have moved for a preliminary injunction granting the relief prayed in the complaint. A preliminary injunction granting some, but not all, of the relief sought will issue.

Section 431(b) requires every labor organization annually to file a financial report ("LM–2") that adequately discloses its financial condition and operations for the preceding fiscal year. Section 431(c) requires that the information in these reports be made available to members, and further states that "every such labor organization and its officers shall be under a duty enforceable at the suit of any member of such organization in any State court of competent jurisdiction or in the United States district court for the district in which such labor organization maintains its principal office, to permit such member for just cause to examine any books, records, and accounts necessary to verify such report." Consonant with the overriding statutory scheme of openness regarding unions' financial dealings, the courts have held that a minimal showing suffices to meet the "just cause" requirement of § 431(c). *Fruit and Vegetable Packers and Warehousemen, Local 760 v. Morley*, 378 F.2d 738, 744 (9th Cir.1967); *Zaloga v. Ruggiero*, 529 F.Supp. 443 (E.D.N.Y.1982).

Here, plaintiffs point out that the union's net assets have declined steadily and substantially since 1983. Moreover, the plaintiffs claim that several specific expenses, as disclosed on the various LM–2 reports, justify further investigation. These include: (1) an increase in meeting expenses from $8,305 in fiscal year 1983–84 to $13,225 in 1984–85; (2) an increase in disbursements for conventions, dinners and tickets from $3,308 in 1983–84 to $6,941 in 1984–85 and $8,492 in 1985–86; (3) an increase in professional fees paid from roughly $40,000 in 1984–85 to over $60,000 in 1985–86; (4) LM–2 entries ranging from $4,199 to $9,311 for "other disbursements" to officers in 1984–85 and 1985–86. Plaintiffs seek to inspect documentation for these expenses, claiming that they all represent areas in which questionable expenditures could be hidden. Defendants, in opposition, have provided affidavits offering explanations of all the challenged items.

■ A finding of just cause to examine a union's books is not a finding of any impropriety by the union or its officers. All that is necessary is the existence of data on the LM–2, or obtained from other sources, that would put a reasonable union member to further inquiry. *Fruit and Vegetable Packers, supra.* The figures cited in the preceding paragraph certainly invite inquiry. They may very well be entirely proper. This Court's ruling in no way implies that there is any merit to the plaintiffs' underlying claims of wasteful expenditure by the union's current officers. If the defendants are correct that all the challenged expenses were appropriate, then the examination of the union records will verify those expenses. Plaintiffs are entitled to satisfy themselves by looking at the records: they have shown just cause for further inquiry into the four areas of expense enumerated above.

In two other areas in which the plaintiffs seek disclosure, however, plaintiffs have failed to meet even the minimal standard of just cause. These are investigations into contract negotiation expenses as well as all expenses for fiscal year 1986–87.

■ In 1983–84, according to the LM–2, Local 101 spent $16,179 for expenses related to its contract negotiation. Negotiations for the next contract, all parties agree, began toward the end of the 1985–86 fiscal year, continued into 1986–87, and were extremely difficult. In fact, the union went on strike before a new contract was signed. The 1985–86 LM–2 shows negotiation expenses for that fiscal year of $9,242.

Plaintiffs argue that most of the negotiations for the later contract took place after the end of the 1985–86 fiscal year, and that expenses exceeding half of the previous

negotiations' *total* cost were run up in a very short time. Thus, they assert, further inquiry is justified. Moreover, an affidavit of Camille Russo, a plaintiff who was on the board in 1986, avers (in generally vague terms) that large sums of money were spent on liquor and lavish meals by her former colleagues and present adversaries. In response, defendants offer the affidavit of James Murray, the Local's current President, who is not a candidate this year. Murray denies outright many of Russo's specific statements. As to the more vague charges, Murray challenges Russo's personal knowledge (Russo denies having joined in the allegedly excessive meals) and asserts that all food and beverage expenses were routine, acceptable and standard for Local 101 and unions in general.

 The Court cannot find, based on the facts before it, that just cause for further inquiry in this area has been shown. Unlike the other expenditures plaintiff challenges, contract negotiation costs do not show an increase on the LM-2. And while the LM-2 is not the *only* acceptable source of just cause, the clear import of the statute is that *some* objective evidence of impropriety must be produced. Congress could have required unions to open their books to any union member who alleged improper expenses. But Congress instead set up a mechanism for reporting aggregate financial figures, together with a right, if those figures aroused sensible suspicions, to inspect the underlying records. That right does not extend to "wholesale random audits" in support of insurgent campaigns in union elections. *Johnson v. Local 1199, Hospital and Health Care Employees Union,* 121 L.R.R. M. 2889, 106 Lab.Cas. (C.C.H.) ¶ 12,217 (S.D.N.Y.1986). The test is whether a *reasonable* union member would be stirred to further inquiry, not whether an opposition candidate might choose to hunt for potential campaign material. Notwithstanding plaintiffs' attempt to imply that enormous additional sums were spent on contract neogotiations in fiscal 1986–87, the Court does not agree that a reasonable union member would seek to inquire further

based on the 1985–86 LM-2 and the affidavits submitted by the parties.

The plaintiffs also seek to examine records of union expenditures for fiscal year 1986–87. The Union's LM-2 for this fiscal year, which ended July 31, 1987, has not yet been filed. The parties and the United States Department of Labor are all in agreement that under applicable regulations, this year's LM-2 is not yet due. Nonetheless, the plaintiffs argue that "there is every reason to believe that defendants' extraordinary expenditures on meals and alcohol extended into the 1986–87 fiscal year," particularly in connection with the contract negotiations. Letter from Daniel E. Clifton to the Court, dated October 29, 1987.

 The Court agrees with plaintiffs that the union could, in principle, be required to disclose information relating to a fiscal year for which an LM-2 had not yet been filed. *United States v. Budzanoski,* 462 F.2d 443 (3d Cir.), *cert. denied* 409 U.S. 949, 93 S.Ct. 271, 34 L.Ed.2d 220 (1972). Failure to file a report should not insulate a union from its duty to disclose. In the case of a delinquent report, the delinquency itself might constitute just cause for an examination of the books. Even if a late report were not delinquent, because the union had received extensions of the filing deadline from the Department of Labor, perusal might be justified if other facts suggested that the union were delaying the filing in order to suppress information. Nonetheless, the statute plainly contemplates that in the ordinary case, LM-2 statements will be filed in due course, examined by concerned members, and, upon a showing of just cause, "verified" by further examination of the underlying records. Here, the 1986–87 report is neither delinquent nor on an extended filing schedule. The mere assertion by plaintiff's counsel in a letter to the court that he believes questionable expenditures have continued into the next fiscal year is not, in this case, sufficient to constitute just cause to disturb the ordinary procedure contemplated by the statute.

The Court's finding that no just cause has been shown to justify investigating

contract negotiation expenses nor any expenses in 1986–87 does not, of course, necessarily foreclose for all time the Local's members' right of access to these records. It is conceivable that the limited examination which this Court is permitting into other expense areas will turn up facts that constitute just cause for further inquiry, either into other expense areas or other fiscal years. If plaintiffs feel that such facts do come to light they may make an appropriate application.

■ The foregoing analysis of the question whether just cause has been shown by plaintiffs also answers the first part of the inquiry which determines whether a preliminary injunction should be granted: likelihood of success on the merits. Plainly, for those expense areas for which the Court holds just cause has been established, success—not even mere likelihood of success—on the merits already exists.

Plaintiffs also satisfy the requirement of irreparable injury which must be met before a preliminary injunction can issue. All the plaintiffs are candidates for office in a union election. Ballots for the election will be mailed out November 16, 1987. Plaintiffs note, correctly, that if they do not gain access to the union records promptly, their purpose for seeking the records will be vitiated—they will be unable to prepare campaign materials informing the membership of the improprieties they hope to discover. Defendants do not seriously dispute that irreparable injury would exist in this situation. *Johnson, supra.*

Finally, the balance of hardships tips in plaintiffs' favor. Defendants' claim that handing over stacks of old invoices, vouchers and bills will seriously disrupt the ongoing business of the Local lacks credibility. And while defendants assert that they will feel obliged to have the Union's own accountant and attorney present to respond to any questions the examining union members may have, the statute does not require, and the plaintiffs have not sought to compel, their attendance. The relief granted herein, as such, does not significantly burden the defendants.

Finally, in addition to being permitted to examine the Union's records, the plaintiffs seek to have an accountant and attorney with them at the examination, and to copy the records they examine. Plaintiffs are clearly entitled to both requests. *Johnson, supra; Zaloga, supra.*

In accordance with the foregoing, it is ORDERED, pursuant to Rule 65, Fed.R. Civ.P., that the defendants shall permit plaintiffs, and, at the same time, any accountant or attorney plaintiffs retain for the purpose, to review and copy the financial records of Local 101, Transport Workers Union of America—including, but not limited to, vouchers, receipts, credit card invoices, hotel bills, ledgers, and reports to the International Transport Workers Union—that concern the following items in the 1984, 1985 and 1986 LM–2 reports of Local 101:

a) meeting expenses
b) conventions, dinners and tickets
c) professional fees
d) officer expenses.

It is further ORDERED that such inspection be permitted no later than November 9, 1987, with the exact time to be determined by mutual agreement of the parties, and that the requirement of a bond be waived.

SO ORDERED.