[No. 32531. *En Banc.* September 2, 1954.]

ED JONES, *Appellant,* v. W. S. JACOBSON, *Respondent.*[1]

[1]Reported in 273 P. (2d) 979.

*Don G. Abel*, for appellant.

*Fred M. Bond*, for respondent.

WEAVER, J.—This is an action for twenty-five hundred dollars damages arising from the alleged conversion of personal property.

Defendant died, pending appeal, and his executrix has been substituted as respondent. To avoid confusion, we will refer to the parties as plaintiff and defendant.

The property involved is described as:

"One (1) set of drums, Tacoma Compound Yarder together with the sled upon which it was mounted, and all of the equipment, accessories and cable belonging thereto and used in connection with the operation thereof."

Throughout the record, the property is designated as a "logging donkey."

In 1944, defendant purchased and went into possession of one hundred sixty acres of land. At that time, the logging donkey was upon the land.

The trial court found:

"That said logging donkey had at one time been used in the said Grayland area in connection with logging operations, but that it had been at the aforesaid location without having been moved or used since 1941 or 1942 and that brush, grass and trees had grown up, through and around it to a height of several feet. That between the years 1944 and 1952 the boiler had been removed from the said donkey and in later years, probably 1948 or 1949, certain driving gears and cylinders, shaft and wiring were removed from said donkey with certain logging cables. That it is not known who removed the above described items from the said logging donkey."

Further, the court found:

"That during the years from 1944 to 1952 the defendant made numerous inquiries as to the ownership of the said logging donkey without success."

In May, 1952, the logging donkey blocked an area through which defendant desired to build a road, in order to de-

velop a watering system for his cranberry lands. Having made numerous inquiries over a period of eight years and not having found the owner, defendant sold the logging donkey for junk to the Western Machinery Exchange for $164.88. At no time prior to sale had anyone made claim to him of ownership in, or title to, the logging donkey.

If these facts were the only ones before it, the trial court would have been entitled to conclude that the owner of the logging donkey had abandoned it. Abandonment of a chattel by the owner is a complete defense to an action for damages for its conversion. 53 Am. Jur. 876, Trover and Conversion, § 81, and cases cited.

However, it appears from the record that in 1946 the Grays Harbor Logging Company transferred title to the logging donkey to a Mr. Rowe, who, in turn, conveyed it to a Mr. Gardner. Mr. Gardner transferred it to Mr. Thorberg, in 1950, and plaintiff acquired title in 1952. There is no evidence that any of the transferees ever took possession of the logging donkey. None of the bills of sale were recorded, and defendant's inquiries concerning ownership disclosed none of these transactions.

The trial court did not conclude that there had been an abandonment, although both counsel seem to have so interpreted the second conclusion of law, which reads:

"That the defendant *was fully warranted and justified in considering the said logging donkey equipment as abandoned* and that his aforesaid sale of the same to Western Machinery Exchange was fully justified within the law." (Italics ours.)

Defendant pleaded the statute of limitations. In addition to concluding, as a matter of law, that the sale of the logging donkey "was fully justified within the law," the trial court concluded:

"That the action of plaintiff herein is barred by the statute of limitations."

Plaintiff appeals from the judgment dismissing his action.

We first consider appellant's assignment of error, directed to the conclusion of law that the action is barred by

the statute of limitations, for, if it is not well taken, we do not reach the problems raised by the remaining assignments of error.

The following sections of our statute are pertinent to this inquiry.

"Actions can only be commenced within the periods herein prescribed after the cause of action accrued. . . ." RCW 4.16.010.

"Within three years: . . . (2) An action for taking, detaining, or injuring personal property, including an action for the specific recovery thereof . . ." RCW 4.16.080.

Did the right of action, upon which appellant maintains this suit, accrue more than three years prior to July 18, 1952, the date he filed his complaint in this action?

On the one hand, we have the personal property, claimed by appellant, located physically upon respondent's land, over which respondent, as owner, had exclusive control. The logging donkey was, at least, in the constructive possession of respondent, if not in his actual possession. He had the indicia of ownership which flows from possession. The trial judge remarked in his memorandum opinion:

"The donkey had been in the *actual physical possession* of the Defendant [respondent] for eight years. . . ." (Italics ours.)

He had no knowledge of ownership and, after making inquiries, acquired no knowledge.

On the other hand, neither appellant nor his immediate predecessors in interest had either actual or constructive possession of the property. At the time of the several transfers, each transferee knew that the transferor did not have possession. At best, giving full weight to appellant's evidence, all that his immediate predecessors in interest had, and all that they could transfer to him, was a right to immediate possession, or a cause of action, in the event a request for immediate possession was denied. The bills of sale were not made a matter of public record, and the record of this case discloses no evidence of any actions, taken by appellant or his predecessors in interest, which would have

given respondent notice of their claimed ownership.

■ In *Young v. Seattle,* 30 Wn. (2d) 357, 361, 191 P. (2d) 273, 3 A. L. R. (2d) 704 (1948), we quoted with approval from 1 Wood on Limitations (4th ed.) 684, § 122a, as follows:

" 'Statutes of limitation commence to run against a cause of action from the time it accrues, or from the time when the holder thereof has the right to apply to a court for relief, and to commence proceedings to enforce his rights. The time when a cause of action has accrued within the statutes of limitations means the time when plaintiff first became entitled to sue.' "

The record is devoid of any indication of how or why the logging donkey came to be on respondent's property, except the finding that it "had at one time been used in the said Grayland area in connection with logging operations." In the absence of evidence, we will not assume that the logging donkey was placed upon the land with the permission or consent of the landowner.

■ When it came to rest on the land which is now owned by respondent, title of the true owner was reduced to a right of immediate possession or, as we previously pointed out, to a cause of action in the event immediate possession was denied. It was at that time that the cause of action accrued. Since the logging donkey was out of the possession of the true owner, he then became entitled to reduce it to possession or to sue for its recovery or value. This right accrued to him without any action upon the part of the landowner.

The record supports the conclusion that the cause of action, upon which appellant sues, came into existence more than three years prior to the commencement of this action. It was not error for the trial court to dismiss the action for this reason.

We appreciate that our conclusion is inconsistent with that reached by the supreme court of Pennsylvania, under somewhat similar circumstances, as appears in *MacDonald v. Leverington Const. Co.,* 331 Pa. 381, 200 Atl. 8 (1938), a case cited to us by appellant. However, our analysis is sup-

ported by the decision of this court in *Edison Oyster Co. v. Pioneer Oyster Co.*, 22 Wn. (2d) 616, 157 P. (2d) 302 (1945), in which this court adopted a different theory.

Briefly, the facts of the *Edison* case, *supra*, are these: In April, 1934, the predecessor in interest of the defendant, Pioneer Oyster Company, planted 26,492 boxes of oyster seed upon certain tidelands. October 15, 1934, wind and waves, resulting from a storm of unusual violence, caused a large part of the oyster seed to drift on to the adjoining tidelands of Mr. Nauman. Although the Pioneer Oyster Company's predecessor in interest knew, within a few days after the storm, that a large part of the oysters planted by it had drifted to the Nauman property, neither its predecessor in interest nor the Pioneer Oyster Company made any claim to the oysters on the Nauman tract or attempted to reclaim them *until November 12, 1943*, when the Pioneer Oyster Company (defendant) wrote plaintiff asserting its claim to the oysters. Plaintiff was under contract to harvest the oysters from the Nauman tract.

As a result of this assertion of ownership, plaintiff brought a declaratory judgment action to have the rights of the parties determined. Defendant cross-complained and pleaded the facts we have set forth. Plaintiff pleaded the statute of limitations. The trial court concluded that all rights of the defendant to the oysters were barred by the statute of limitations.

Upon appeal, defendant argued that (1) there was no evidence of adverse possession of the oysters; and (2) that since a demand for the possession of the property was a condition precedent to bringing an action of replevin, and since there was no evidence of such a demand, the statute of limitations did not begin to run until the demand was made.

This court said of defendant's contentions:

"We shall discuss the question of the statute of limitations, and the necessity of a demand to start the running of the statute, *without regard to the question of adverse possession*; for, if the statute of limitations has barred appellants from instituting this action, then, so far as they are

concerned, they are in no position to question the rights accorded to respondents by this judgment." (p. 624) (Italics ours.)

This court pointed out that the defendant's predecessor could have gone immediately upon the Nauman tract and reclaimed the oysters, or, if such right was denied, it could have instituted an action for replevin. However, defendant pursued neither course, but waited almost nine years before it made any claim to the oyster seed or the oysters resulting therefrom.

In affirming the judgment that defendant's right of action was barred by the statute of limitations, the court said:

"Under this state of facts, we have another well-recognized rule of law that is applicable, relative to the statute of limitations. In 37 C. J. 953, § 324, it is stated:

" 'Where plaintiff's right of action depends upon some act to be performed by him preliminary to commencing suit, and he is under no restraint or disability in the performance of such act, he cannot suspend indefinitely the running of the statute of limitations by delaying the performance of the preliminary act; for it is not the policy of the law to put it within the power of a party to toll the statute of limitations; . . . The rule that, where the right of action depends upon a preliminary step to be taken by plaintiff, he cannot indefinitely delay the taking thereof, rests upon the principle that plaintiff has it in his power at all times to do the act which fixes his right of action.' " (p. 625)

In the instant case, the right of action accrued at the time appellant's predecessors in interest could have perfected their right to sue, whether such action be in replevin or in trover for damages. Our conclusion is based upon the rule that appellant and his predecessors had time, after the logging donkey had been placed upon the land now owned by respondent, in which to repossess it or to take legal action to regain its possession; that the time is that fixed by the statute—three years; and that this time had expired prior to the commencement of the action.

The judgment is affirmed.

MALLERY, HAMLEY, DONWORTH, and FINLEY, JJ., concur.

HILL, J. (concurring in the result)—The result of the majority opinion is sound, if strictly limited to what I conceive to be a modified version of the theory of adverse possession as applied to personal property, namely, a possession adverse to the *possessory interest* of the owner as distinguished from a possession under claim of right or title.

In adverse possession of real property, the emphasis is placed upon possession adverse to the ownership of the true owner. The emphasis on possessory interest, rather than ownership, in the case of personal property, is logical, because possession is one of the primary incidents of ownership of such property. Abandonment of possession of personal property can result in abandonment of ownership, whereas there can be no abandonment of title to real property.

The theory of the *Edison* case (*Edison Oyster Co. v. Pioneer Oyster Co.*, 22 Wn. (2d) 616, 157 P. (2d) 302 (1945)) is that the statute of limitations requires actions for the recovery of personal property to be brought within three years after the cause of action accrues, and that, although a demand is required prior to the accrual of a cause of action, the demand must be made within a reasonable time, namely, within the statutory period, the reason being that the owner should not have the power to prevent the statute from running by failing to make a demand.

It seems to me that the statute of limitations should begin to run, not from the accrual of the right to immediate possession of the property and the right to sue in case a demand for return is denied (as might be inferred from the majority opinion, p. 269), but rather from the time that it can be said that a possession exists which is adverse to the possessory interest of the owner. In other words, a cause of action could not be said to have accrued and the necessity of a demand dispensed with in every case where the owner is out of possession. If personal property is in the possession of another by being on his land with the consent of the landowner or his predecessors, it could not be said that a cause of action had accrued until there had been a demand for possession

and a refusal, because the owner would not be aware that the possession of the landowner is adverse to his possessory interest, *i.e.*, his right to immediate possession.

While the present action is for damages for conversion, the same reasoning applies as to a possessory action, and if the plaintiff in such an action could not maintain a possessory action, he has no action in conversion.

OLSON, J. (concurring in the result)—I concur in the result reached by the majority, but cannot agree that the cause of action is barred by the statute of limitations. The action is for conversion. The only act of conversion or denial of plaintiff's right to possession of the logging donkey relied upon or established, was its sale by defendant in May, 1952. Until this act occurred, plaintiff's cause of action based upon it could not have accrued, and this proceeding, commenced July 18, 1952, or about three months after its occurrence, was timely.

GRADY, C. J. (concurring in the result)—In 1941, the owner of a logging donkey left it upon a tract of land owned by another person. Respondent subsequently became the owner of the land. At various times, movable parts were taken from the logging donkey, and brush grew up around it. No one made known to the owner of the land any claim of ownership. Respondent, desiring to make use of the area, removed the donkey from his land and sold it to a junk dealer for $164.88. Appellant, claiming to be the owner of the donkey, suddenly realized that very valuable property had been converted by respondent and brought an action for damages.

The trial court had no difficulty in finding that the donkey had been abandoned by the owner and dismissed the action. The trial court also concluded the action was barred by the statute of limitations.

On appeal, we got into a highly scholastic maze of legal theory as to what it took to abandon property so that one situated as respondent would be justified in getting it out of his way and selling it for junk and not be guilty of conversion. We heard the case *En Banc* March 16, 1954. We

got deeper into the labyrinth. A majority have solved the problem by the statute of limitations route. This may be justified on the theory that the case should be finally decided and the litigation terminated.

My view is that the action was for conversion of the property and that the cause of action, if any, accrued when the property was sold by respondent, but by reason of abandonment by its owner respondent was not guilty of conversion. I would affirm the judgment on this ground.

SCHWELLENBACH, J. (dissenting)—This being an action for conversion, the sole question before us is, was the property abandoned. If it was abandoned, the action should be dismissed. If it was not abandoned, then there was a conversion and the plaintiff is entitled to damages. The trial court made no finding as to abandonment. The case should be remanded with direction to the trial court to make a finding on this question.