[No. 2984-1. Division One. April 19, 1976.]

VERN J. OJA & ASSOCIATES, *Respondent*, v. WASHINGTON PARK TOWERS, INC., *Appellant*, CAWDREY & VEMO, INC., ET AL, *Respondents*.

---

*Murray, Dunham & Waitt, Robert K. Waitt,* and *Barry M. Johnson,* for appellant.

*Schweppe, Doolittle, Krug, Tausend, Beezer & Beierle, Warren A. Doolittle,* and *Donald L. Logerwell,* for respondents.

FARRIS, J.—The Lakeview Lanai, a 42-unit apartment building located in Seattle, was constructed in 1959 and purchased by Oja & Associates in 1964. Thereafter, Washington Park Towers, Inc., as owner of property adjacent to the Lakeview Lanai, entered into a contract with Cawdrey & Vemo, Inc., for the construction of a condominium apartment building. Cawdrey & Vemo engaged Manson Construction & Engineering Co. to drive the pilings necessary to support the planned building. Manson worked from August 1966 to September 1966. There was no construction activity at the site from September 1966 until October 1967. During this period, Cawdrey & Vemo and Manson were

relieved of their responsibilities. Work resumed on the project in the fall of 1967 and Larsen Construction Company completed the pile driving between approximately November 1967 and April 1968. The building was completed in 1969. Oja & Associates filed this action on March 2, 1971, to recover for damage allegedly sustained by the Lakeview Lanai as a result of the pile driving and other construction activity associated with the condominium apartment building. Washington Park Towers, Cawdrey & Vemo, Manson, Larsen, Fifth West, Inc., and R. C. Hedreen Co., Inc., were named as defendants. The claims against Cawdrey & Vemo and Manson were dismissed with prejudice on motions for summary judgment. On April 17, 1974, judgment was entered on a jury verdict against Washington Park Towers for $73,100. In a special verdict, the jury attributed 70 percent of the damage to the pile driving which occurred between August and September of 1966 and the remaining 30 percent to the pile driving which occurred between November 1967 and April 1968. Washington Park Towers appeals; Oja cross-appeals.

Washington Park Towers first assigns error to the refusal of the court to dismiss the cause on the ground that it is barred by the statute of limitations. Both parties agree that the 3-year limitation of RCW 4.16.080 applies,[1] but disagree as to the date that the cause of action accrued under RCW 4.16.010.

Washington Park Towers contends that the cause of action accrued immediately following the commencement of pile driving activities in August of 1966 when the first damage occurred and Oja had a right to apply to the courts for relief. See 51 Am. Jur. 2d *Limitation of Actions* § 109, at 681 (1970); *Jones v. Jacobson*, 45 Wn.2d 265, 269, 273 P.2d 979 (1954). It is also argued that, at the latest, the cause of

---

[1] It is therefore the law of the case and we do not reach the issue of which statute of limitations is applicable to pile driving in general. *Compare* RCW 4.16.080(1); *Dorsey v. Speelman*, 1 Wn. App. 85, 87, 459 P.2d 416 (1969); *Zimmer v. Stephenson*, 66 Wn.2d 477, 483, 403 P.2d 343 (1965) *with* RCW 4.16.130; W. Prosser, *Law of Torts* § 13, at 65, § 89, at 594-95 (4th ed. 1971).

action accrued in September of 1966 when the initial pile driving ceased and the first substantial damage had occurred. *See Cheskov v. Port of Seattle,* 55 Wn.2d 416, 420-21, 348 P.2d 673 (1960). Thus, Washington Park Towers concludes that because the damage which resulted from the November 1967 to April 1968 pile driving was not different in kind nor greater in degree than the damage which resulted from the initial pile driving, the action for damages for *both* pile driving periods accrued, at the latest, in September of 1966 and is barred. *See Cheskov v. Port of Seattle, supra* at 420-21. Finally, even assuming that the pile driving activities constituted separate and distinct situations with a different cause of action arising from each, it is argued that the damages awarded should be reduced by 70 percent because the action on the initial pile driving is barred by the statute of limitations.

In response, Oja first refers to its complaint which alleges that the damage to the Lakeview Lanai was caused by the construction activities engaged in by Washington Park Towers in building its condominium apartment building. It is submitted that the construction activity was of a continuing nature and that Oja's claim did not accrue until the building was completed in 1969. *See Gillam v. Centralia,* 14 Wn.2d 523, 529-30, 128 P.2d 661 (1942). *See also Papac v. Montesano,* 49 Wn.2d 484, 488-89, 303 P.2d 654 (1956). At the earliest, Oja submits that the accrual date for the action is April 1968 when all of the pile driving had been completed.

■ We have reviewed the *Gillam, Papac* and *Cheskov* decisions. While they all involve situations in which a governmental entity has damaged real property without first going through with a condemnation proceeding, that distinction is not determinative here. The general rule which emerges from those decisions is that if substantial damage has already occurred at the time the project is completed, the action accrues at that point. *Papac v. Montesano, supra* at 488, *citing Gillam v. Centralia, supra.* However, if the damage has not occurred when the project is completed,

the action accrues when the first substantial injury is sustained thereafter. *Papac v. Montesano, supra* at 488. The pile driving activity here was all a part of the construction of the condominium apartment building. Although the jury found that 100 percent of the damages alleged flowed from the pile driving activity as a whole (even though it assigned percentages to each time period), nothing in the record persuades us that we should deviate here from the general rule that the cause of action accrued when the building was completed. Thus, since the complaint was filed within 3 years of the 1969 completion date, the statute of limitations does not bar Oja's action.

In view of this holding, it is unnecessary to adjudicate the contentions by Washington Park Towers that (1) the diary of a certain witness is a physical fact which conclusively establishes that the Lakeview Lanai sustained no noticeable or continued damage after October 31, 1966, and (2) the trial court erred in refusing to grant its motion for a judgment n.o.v. or, in the alternative, a new trial on the ground that the proof offered by Oja relating to the termination date of the second period of pile driving was legally inadequate.

Washington Park Towers next argues that if the dismissal of the actions against Cawdrey & Vemo and Manson Construction & Engineering Co. was proper on the ground that the statute of limitations had expired, then it should also have the benefit of the statute of limitations shield. The basis of the argument is the general rule, as phrased by Washington Park Towers, that "a principal cannot be held derivatively responsible when the agent has been discharged." Brief for Appellant at 17. *See Doremus v. Root*, 23 Wash. 710, 717, 63 P. 572 (1901). We disagree. The rule concerning derivative liability is more complex than as expressed by Washington Park Towers:

> A valid judgment on the merits and not based on a personal defense, in favor of a person charged with the commission of a tort or a breach of contract, bars a subsequent action by the plaintiff against another responsible for the conduct of such person if the action is based

solely upon the existence of a tort or breach of contract by such person, whether or not the other person has a right of indemnity.

Restatement of Judgments § 99, at 493 (1942). Here, the dismissal of Oja's claims against the two construction companies was based upon the statute of limitations rather than the merits. Further, under the facts and law of this case, the statute of limitations defense was uniquely personal to the two construction companies. We therefore reject the contentions by Washington Park Towers that (1) the judgment against it should have been reduced by 70 percent since the statute of limitations had run against that portion of the damage, and (2) the court erred in instructing the jury that the acts of the contractors employed by Washington Park Towers were in fact the acts of Washington Park Towers.

■ Washington Park Towers next assigns error to the refusal of the court to grant its motion for a mistrial and new trial on the ground that certain statements were improperly made to the jury regarding pretrial settlement discussions. Because Washington Park Towers had anticipated that a partner in Oja & Associates would attempt to comment during his testimony on certain alleged offers of settlement, proceedings were had in the absence of the jury during which the trial court specifically told the witness that any pretrial offers of settlement were not to be brought into evidence. Statement of facts 267. Following further discussion outside the presence of the jury, the witness asked the attorney for Oja & Associates whether he was permitted to mention settlement discussions and was informed that they were not to be discussed. Statement of facts 271-72. The following occurred a short time later in the presence of the jury:

Q Now, following that meeting did you have the impression, sir, that the damage to the Lakeview Lanai would ultimately be taken care of by Washington Park Towers, Inc.?

A That was my impression, yes.

MR. CROWDER: Your Honor, I have got to object to both

the question and the answer along the lines that we discussed while the jury was out. I think it is clearly inadmissible.

THE COURT: Sustained.

Washington Park Towers permitted the questioning to continue; the following occurred shortly thereafter:

Q During the first of the pile driving in 1966 did you think you could have increased the rents at that time?

A I just don't remember off-hand the exact dates. Of course, there was a lot of inconvenience with the construction there that you have to put up with before the building began to crack, and the floors and walls, and floors separated, and so on. There was complaints, regular complaints by the tenants, and all these other things that happened, and it was just more than we could keep up with out of the income of the building, even though I don't believe the partners have had any draws out of that building, practically nothing since that started. We are certainly plowing back all the income we can to keep up with these repairs, but they are just beyond what we can do, either without a major infusion of capital looking forward to settlement with the Washington Park Towers people; so we haven't been able to raise the rents up to now.

Following one more question, Washington Park Towers suggested that the court take a recess. The court ordered the recess and following preliminary discussion, Washington Park Towers, through its attorney, moved for a mistrial. The court denied the motion for stated reasons, sustained the objections, and indicated a willingness to admonish the jury. The admonishment was rejected:

MR. CROWDER: We have discussed it, and we haven't drafted anything, because it is our judgment in view of the denial of the motion for mistrial that probably an instruction would have a tendency to perhaps underscore or emphasize more than it would perhaps cure the situation; so we would rather that you not say anything at this time, your Honor.

THE COURT: All right, fine.

The basis of the argument advanced by Washington Park Towers is that the references to settlement so influenced

the jury that the trial court abused its discretion in not granting the motion. We reject the argument. In general, granting or denying a motion for a mistrial or a motion for a new trial is a matter within the discretion of the trial court which will not be disturbed in the absence of an abuse. *See Anderson v. Dobro,* 63 Wn.2d 923, 928, 389 P.2d 885 (1964). The important exception, not applicable here, is when the grounds given by the trial court for granting a new trial are based upon questions of law. In such a situation, no element of discretion is involved. *See Detrick v. Garretson Packing Co.,* 73 Wn.2d 804, 812, 440 P.2d 834 (1968). A careful review of the record has convinced us that there is no abuse here.

■ Washington Park Towers next assigns error to the refusal of the trial court to grant its motion for judgment n.o.v. or, in the alternative, for a new trial on the grounds that Oja failed (1) to segregate the damage which the Lakeview Lanai sustained prior to the construction activity by Washington Park Towers, and (2) to establish proximate causation. In response, Oja argues that there was no preexisting damage to the building and therefore no problem regarding segregation and proximate causation. The resolution of the preexisting damage issue was a question of fact for the jury. There is substantial evidence in the record which supports Oja's position and the jury's verdict.

■■ Washington Park Towers next assigns error to the following instruction which imposed strict liability on pile driving:

The plaintiff has the burden of proving that the activity of the defendant was the proximate cause of alleged damages to the plaintiff.

You are instructed that if vibrations from pile driving proximately caused damages to the Lakeview Lanai that Washington Park Towers is responsible therefor, to the extent, if any you find, that said vibrations caused damages, in accordance with the instructions hereinafter given.

Instruction No. 4. The standard in Washington for deter-

mining whether strict liability shall be imposed upon a particular activity is:

(1) One who carries on an abnormally dangerous activity is subject to liability for harm to the person, land or chattels of another resulting from the activity, although he has exercised the utmost care to prevent such harm.

(2) Such strict liability is. limited to the kind of harm, the risk of which makes the activity abnormally dangerous.

Restatement (Second) of Torts § 519 (Tent. Draft No. 10, 1964). *See Siegler v. Kuhlman*, 81 Wn.2d 448, 458, 502 P.2d 1181 (1972); *Pacific Northwest Bell Tel. Co. v. Port of Seattle*, 80 Wn.2d 59, 64, 491 P.2d 1037 (1971). Regarding what constitutes an abnormally dangerous activity, the following guidelines are offered:

In determining whether an activity is abnormally dangerous, the following factors are to be considered:

(a) Whether the activity involves a high degree of risk of some harm to the person, land or chattels of others;

(b) Whether the gravity of the harm which may result from it is likely to be great;

(c) Whether the risk cannot be eliminated by the exercise of reasonable care;

(d) Whether the activity is not a matter of common usage;

(e) Whether the activity is inappropriate to the place where it is carried on; and

(f) The value of the activity to the community.

Restatement (Second) of Torts § 520 (Tent. Draft No. 10, 1964). *See Siegler v. Kulhman, supra; Pacific Northwest Bell Tel. Co. v. Port of Seattle, supra.* We hold that pile driving falls within these criteria. *See Caporale v. C.W. Blakeslee & Sons, Inc.,* 149 Conn. 79, 175 A.2d 561, 563-65 (1961); *Lowry Hill Properties, Inc. v. Ashbach Constr. Co.,* 291 Minn. 429, 194 N.W.2d 767, 772 (1971); *Cincinnati Terminal Warehouses, Inc. v. Contractor, Inc.,* 324 N.E.2d 581, 582 (Ohio App. 1975). An analogous Washington decision is *Patrick v. Smith,* 75 Wash. 407, 410-14, 134 P. 1076 (1913),

in which the court held the defendants liable, in the absence of a showing of negligence, for the damage sustained by plaintiff's well as a result of *vibrations* caused by an explosion set off by the defendants. We find no error in the instructions given.

Washington Park Towers next assigns error to the following instruction given by the trial court:

If plaintiff's building was designed and constructed to withstand normal conditions and you find that it was damaged by defendant's pile driving, then plaintiff is entitled to recover for that damage. On the other hand, if you find that the plaintiff's building suffered damage from causes not related to pile driving, then you are not to assess these damages against the defendant.

Instruction No. 6. It is argued that the instruction is defective because (1) there is no definition of what "normal conditions" the building was designed to withstand, thereby inviting speculation and conjecture by the jury, and (2) the instruction is tantamount to a directed verdict for Oja because it is applicable only to the period of pile driving and not to any preexisting damage or condition. We reject these arguments as without merit.

■ Washington Park Towers next assigns error to the refusal of the trial court to give its proposed instruction No. 4 on proximate cause. It argues that its instruction was required in order for it to argue its theory of the case that where there is preexisting damage followed by pile driving, it is necessary that the pile driving be the cause of the consequences alleged. We reject the argument. Instruction No. 5 on proximate cause given by the trial court was sufficient for that purpose.

Washington Park Towers next assigns error to the refusal of the trial court to give its proposed instruction No. 5 on proximate cause. It is argued that this instruction was necessary to permit it to argue its theory that the damage sustained by the Lakeview Lanai could have occurred as the result of natural settlement, regardless of the pile driving activity. We reject the argument. Instruction No. 5

given by the trial court on proximate cause was adequate for that purpose.

Washington Park Towers next assigns error to the refusal of the trial court to give its proposed instruction on segregation of damages. It is argued that the instruction was necessary to inform the jury that a defendant can only be held liable for those damages which he has caused. The argument is without merit. Instruction No. 6 given by the trial court specifically informed the jury: "If you find that the plaintiff's building suffered damage from causes not related to pile driving, then you are not to assess these damages against the defendant."

Washington Park Towers next assigns error to the refusal of the trial court to give its proposed instruction No. 7. It is argued that the instruction was necessary for Washington Park Towers to argue its theory that the superimposed weight of the building caused the settlement. We disagree. Instruction No. 6 given by the trial court limited the jury's consideration of causes to pile driving and specifically excluded all others. That was sufficient.

Finally, Washington Park Towers assigns error to the refusal of the trial court to give its proposed instruction No. 8:

> Defendant is not liable for any damage to the Lakeview Lanai Apartment which pre-existed commencement of pile driving activity at Washington Park Towers in August, 1966.
> Defendant is liable for any damage to the Lakeview Lanai Apartment caused by pile driving while constructing the Washington Park Towers.
> Plaintiff has the burden of proving that damage was caused by pile driving, the burden of segregating between pre-existing and later occurring damage, as well as the burden of proving the amount of its damage.
> By giving this instruction, the Court does not mean to commit either that there was or was not damage caused by pile driving, or that there was or was not pre-existing or later occurring damage. That is for your determination as the trier of facts.

In proposing this instruction, Washington Park Towers did

not waive its argument that negligence, not strict liability, should be the standard for imposing liability on pile driving in this state. What Washington Park Towers argued then and argues now is that the instruction was necessary for it to argue its theory of the case to the jury. We reject the argument. The instructions given by the trial court adequately covered the material contained in proposed instruction No. 8.

On cross-appeal, Oja argues that it was error for the court to enter an order of summary judgment dismissing its action against Cawdrey & Vemo and Manson Construction & Engineering Co. on the ground that the statute of limitations had run as to them. We disagree for the reasons discussed herein.

Affirmed.

Swanson and Andersen, JJ., concur.

Petition for rehearing denied September 14, 1976.

Review granted by Supreme Court February 7, 1977.