# IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| NICOLE B. VERRASTRO, as Surviving Daughter of Bridget E. Verrastro and Administratrix of the Estate of Bridget E. Verrastro, | § § § § | No. 233, 2018 |
| | § | |
| Plaintiff Below, Appellant, | § § | Court Below—Superior Court of the State of Delaware |
| | § | |
| v. | § § | C.A. No. N14C-10-159 |
| BAYHOSPITALISTS, LLC, d/b/a Bayhealth Hospitalists, LLC, | § § § | |
| Defendant Below, Appellee. | § § § | |

Submitted: January 16, 2019
Decided: April 8, 2019

Before **STRINE**, Chief Justice; **VALIHURA**, **VAUGHN**, **SEITZ**, and **TRAYNOR**, Justices, constituting the Court *en Banc*.

Upon appeal from the Superior Court. **REVERSED** and **REMANDED.**

Ben T. Castle, Esquire (argued) and Bruce L. Hudson, Esquire, Hudson & Castle Law, LLC, Wilmington, Delaware, for Appellant Nicole B. Verrastro.

Gregory S. McKee, Esquire and Lauren C. McConnell, Esquire (argued), Wharton Levin Ehrmantraut & Klein, P.A., Wilmington, Delaware, for Appellee Bayhospitalists, LLC.

**TRAYNOR**, Justice:

Does the dismissal of a medical negligence claim against two physicians on statute-of-limitations grounds bar the prosecution of a timely filed claim based on the same underlying facts against the physicians' employer under the doctrine of *respondeat superior*? The Superior Court, relying on our decision in *Greco v. University of Delaware*,[1] ruled from the bench that the dismissal of the physicians effectively extinguished the claims against the physicians' employer and therefore entered summary judgment in the employer's favor.[2]

The Superior Court correctly read *Greco*, and under *Greco*'s teaching, the Superior Court's dismissal was proper. In this *en banc* decision, however, we conclude that *Greco* should be overruled to the extent that it held that, if a plaintiff has failed to sue the employee whose malpractice allegedly injured her within the statute of limitations, she is for that reason alone barred from suing the employer under principles of *respondeat superior*. Because in this case the plaintiff sued the employer in a timely manner, settled principles of law authorize the plaintiff to proceed against that employer. Although the plaintiff must of course prove her claim against the employer, including that the employee was negligent, the fact that she

---

[1] 619 A.2d 900 (Del. 1993).
[2] App. to Op. Br. A107 ("A__" hereafter).

2

failed to sue the employee in a timely manner does not act to immunize the employer. Accordingly, we reverse the judgment of the Superior Court.

## I. BACKGROUND

For the most part, the facts surrounding the medical negligence allegations are not germane to this appeal, but a brief summary of those facts follows.

On August 12, 2012, Bridget Verrastro went to the emergency room at Milford Memorial Hospital complaining of breathing difficulties.[3] She was discharged later that day with an antibiotic prescription and with instructions to schedule an appointment with a thoracic surgeon.[4] Bridget's breathing difficulties worsened, however, and the next day she went to the emergency room of Kent General Hospital, which is part of the same hospital system as Milford Memorial. At Kent General, Bridget was examined and treated by Dr. Rebekah Boenerjous and Dr. Tricia Downing (the "Doctors"), employees of Appellee Bayhospitalists, LLC, which operates under the name of Bayhealth Hospitalists, LLC ("Bayhealth"). But despite the Doctors' efforts, Bridget's condition quickly worsened, and at 1:07 a.m. on August 14, 2012, Bridget was pronounced dead.[5] Kent General performed an autopsy on Bridget, and the examining physicians found a large "mediastinal mass,"

---

[3] A393.
[4] A107–08; A104.
[5] A109–10.

*i.e.*, a tumor, within Bridget's chest.[6] That tumor, while composed in part of benign substances, constricted Bridget's breathing and blood flow and ultimately caused Bridget's fatal heart failure.[7]

In October 2014, Nicole Verrastro, Bridget's daughter, acting as the personal representative of Bridget's estate, filed a medical negligence action against several healthcare providers, including the Doctors and Bayhealth. Verrastro's complaint alleged that the Doctors' failure to diagnose and treat the tumor caused her mother's suffering and death. Verrastro did not file the action within the two-year statute of limitations period ordinarily applicable to medical negligence actions. Instead, she attempted to toll the statute by sending Notices of Intent under 18 *Del C.* § 6856(4) to Bayhealth and the Doctors.[8]

All three of the Notices were sent to Bayhealth's address. But unbeknownst to Verrastro, both of the Doctors had left the employ of Bayhealth, and the Notices to the Doctors went undelivered and were returned to Verrastro's counsel as undeliverable. Thus, Bayhealth received the Notice before the two-year statutory period had expired, but the Doctors did not.

---

[6] A111–12.

[7] A112.

[8] Under 18 *Del. C.* § 6856(4), "A plaintiff may toll the . . . statutes of limitations [for medical malpractice] for a period of time up to 90 days from the applicable limitations contained in this section by sending a Notice of Intent to investigate to each potential defendant or defendants by certified mail, return receipt requested, at the defendant's or defendants' regular place of business. . . . The 90 days shall run from the last day of the applicable statute of limitations contained in this section."

Despite the failed delivery of the Doctors' notices, when Verrastro filed her action on October 17, 2014—inarguably beyond the ordinary two-year statutory period but within the tolling 90-day period under 18 *Del C.* § 6856(4)—she named both Bayhealth and the Doctors as defendants. Not surprisingly, the Doctors moved to dismiss on the grounds that the complaint was barred by the two-year statute of limitations.[9] In September of 2015, the Superior Court granted the Doctors' motion. After the Doctors were dismissed, the suit then proceeded to discovery, which failed to produce evidence supporting a direct, non-vicarious claim against Bayhealth.

After discovery, Bayhealth moved for summary judgment on the grounds that, because all claims against the Doctors had been dismissed, the vicarious claims against Bayhealth based on the doctrine of *respondeat superior* were no longer viable. The Superior Court, relying on our decision in *Greco*, granted Bayhealth's motion. This appeal followed.

## II. STANDARD OF REVIEW

We review grants of summary judgment and questions of law *de novo*.[10]

## III. ANALYSIS

The essence of the Superior Court's decision below and Bayhealth's response to Verrastro's contention on appeal—relying almost exclusively on *Greco*—is that,

---

[9] The Doctors also raised Verrastro's failure to properly and timely serve the Doctors within 120 days after the filing of the Complaint. *See* Super. Ct. Civ. R. 4(j).

[10] *Ramirez v. Murdick*, 948 A.2d 395, 399 (Del. 2008); *LeVan v. Indep. Mall, Inc.,* 940 A.2d 929, 932 (Del. 2007).

5

in a suit against an employer under the doctrine of *respondeat superior*, "a time bar against the individual [tortfeasor] employee accrues to the benefit of the employer."[11] For her part, Verrastro says that Bayhealth reads *Greco* too broadly and that settled *respondeat superior* law dictates a different result. Because the application of *Greco* was case-dispositive below and further because a portion of *Greco*'s reasoning appears to be in tension with, if not contrary to, another precedent of this Court, *Fields v. Synthetic Ropes, Inc.*,[12] we are compelled to re-examine *Greco*.

### A.  General *respondeat superior* principles

Under the "well entrenched doctrine of agency law"[13] known as *respondeat superior*,[14] "[a]n employer is subject to liability for torts committed by employees while acting within the scope of their employment."[15] In *Fields*, Chief Justice Wolcott explained the doctrine's rationale:

> The liability thus imposed upon the employer arises by reason of the imputation of the negligence of the employee to his employer through application of the doctrine of *respondeat superior*. The foundation of

---

[11] Answering Br. 13.

[12] 215 A.2d 427 (Del. 1965).

[13] *Hecksher v. Fairwinds Baptist Church, Inc.*, 115 A.3d 1187, 1209 (Del. 2015) (Vaughn, J., dissenting) (quoting Mark J. Loewenstein, *Imputation, The Adverse Interest Exception, and The Curious Case of the Restatement (Third) of Agency*, 84 U. COLO. L. REV. 305, 309–10 (2013)).

[14] "*Respondeat superior*" literally translated means "let the master answer." *Respondeat Superior*, Black's Law Dictionary (10th ed. 2014); Bryan A. Garner, *Garner's Dictionary of Legal Usage* 781 (3d ed. 2011).

[15] Restatement (Third) of Agency § 2.04 (2005); *see also* Restatement (Second) of Agency § 219 (1958).

6

the action against the employer is still negligence, even though liability for that negligence has been broadened to include the employer. The imposition of liability on the employer thus arises, not because the employee is liable personally for his conduct, but because the employer selected an employee who performed the employer's business negligently and caused an injury. *As such, the imputation of negligence rests squarely upon, and is justified by, the culpability of the employee, not upon the circumstance of whether or not the employee may, himself, be held liable for his act.*[16]

Under this explication of the rule, the employer's liability hinges upon the employee's *culpability*[17]—as distinguished from the employee's *liability*.[18] Accordingly, in *Fields*, we held that an automobile driver's employer could be held liable for the employee-driver's negligence that resulted in injuries to the employee's wife despite the fact that the employee was immune from suit under the doctrine of interspousal immunity. *Fields*, it would seem, weighs heavily against the Superior Court's entry of summary judgment for Bayhealth in this case. But rather than applying *Fields*' rationale, the Superior Court followed what appears to be equally clear guidance from this Court in *Greco* pointing in the opposite direction. We therefore turn to that opinion.

---

[16] *Fields*, 215 A.2d at 432 (emphasis added and citations omitted).

[17] *I.e.,* whether the employee has breached a duty. *See Culpable*, Black's Law Dictionary (10th ed. 2014).

[18] *I.e.*, whether a legal remedy is available against that employee. *See Liability*, Black's Law Dictionary (10th ed. 2014) ("The quality, state, or condition of being *legally* obligated or accountable; legal responsibility to another or to society, *enforceable by civil remedy* or criminal punishment." (emphasis added)).

7

## B. *Greco v. University of Delaware*

In *Greco,* we held that "[i]f an employee, who is a licensed health care provider, is not liable to the plaintiff for medical negligence, neither is the employer."[19] Greco, a University of Delaware undergraduate student, had sued UD and one of its physicians after she received a prescription for an oral contraceptive that produced debilitating side effects, and a UD physician failed to instruct the student to stop taking the contraceptive even after the student complained of those side effects to the physician.[20] The suit was filed two years and twelve days after the UD physician had last rendered care to Greco. Therefore, after discovery, UD and the physician moved for summary judgment on the grounds that Greco's claim was time-barred.

Greco conceded that the claims against the physician were barred by the two-year medical-negligence statute, but argued that, under *Cole v. League for Planned Parenthood*,[21] the claim against UD was subject to the general statute of limitations applicable to personal injury actions found in 10 *Del. C.* § 8119 because UD itself was not a licensed health care provider.[22] Although § 8119's limitations period was

---

[19] *Greco*, 619 A.2d at 903.
[20] *Id.* at 901–02.
[21] 530 A.2d 1119 (Del. 1987). In *Cole*, we held that the two-year medical malpractice statute was inapplicable to a vicarious claim against on employer for when neither the employer nor the employee was a licensed health care provider. Here, it is undisputed that the Doctors were licensed health care providers.
[22] *Greco*, 619 A.2d at 901 ("[Greco] contends that all of the defendants are subject to the general personal injury statute of limitations set forth in 10 *Del. C.* § 8119").

also two years, Greco contended that our interpretation of the discovery rule as applied to § 8119 rendered her claim timely.

The Superior Court rejected Greco's argument and granted summary judgment in UD's favor, and we affirmed. We reasoned that on any vicarious liability claim, UD was protected by the same statute of limitations rule that applied to its employee.[23]

We do not challenge *Greco* today to the extent that it stands for the straightforward proposition that, where the plaintiff first noticed an injury no later than December 8, 1987, a medical negligence suit filed on December 20, 1989 based on that injury without the benefit of any additional tolling is untimely. And if that is all *Greco* had said, it would not pertain to Verrastro's claims against Bayhealth, which were, after all, timely filed by virtue of § 6856's tolling provision. But that is not all we said. We turn now to a closer examination of *Greco*'s rationale and how it has come into play here.

*Greco*'s analysis is grounded on the sound principle that "a viable cause of action against the employee for negligence is a condition precedent to imputing vicarious liability for such negligence to the employer pursuant to the theory of

---

[23] *Id.* at 904 ("the two-year time limitation in the medical malpractice statute, which admittedly bars Greco's claims against Dr. Talbot, accrues to the benefit of her employers"). We also held that, independently of whether the plaintiff had any viable *vicarious* claims, the statute of limitations also barred any *direct* claim against UD. That holding is not at issue in this case.

*respondeat superior.*[24] *Greco*'s recognition of this principle was followed by equally sound statements of the rule:

> Where the alleged basis for the liability of an employer is the negligence of an employee, the employer cannot be held liable unless the employee is shown to be liable. Hence, *generally, if absence of culpability on the part of the employee to the injured person has been established by litigation, the employer cannot be held liable to the injured person* . . . .
>
> Accordingly, in an action for medical malpractice, this Court has held that the *alleged negligence of an employee*, who is a health care provider, *must be the focus of any inquiry into the vicarious liability of the employer of that health care provider under the doctrine of respondeat superior* . . . . If an employee, who is a licensed health care provider, is not liable to the plaintiff for medical negligence, neither is the employer. *Consequently, the alleged negligence of Dr. Talbot must be the focus of our inquiry into Greco's claims against the University* and the Student Health Care Center, which allege their vicarious liability under the doctrine of *respondeat superior.*[25]

To this point, *Greco* and *Fields* remain in harmony. But *Greco* went a step further:

> Greco's claims for medical negligence against Dr. Talbot are acknowledged by Greco to be barred by the medical malpractice statute of limitations. 18 *Del. C.* § 6856. Since Dr. Talbot (the employee) is not liable to Greco *on the merits*, because Greco's claims are barred by the medical malpractice statute of limitations, there is no vicarious liability to be imputed to Dr. Talbot's employers, the University and the Student Health Care Center . . . . *The result of the time bar to Greco's claim for medical negligence against Dr. Talbot is a failure of Greco's vicarious claims on the theory of respondeat superior against Dr. Talbot's employers*, the University and the Student Health Center.[26]

---

[24] *Id.* at 903 (citing 2 *Mecham on Agency* § 2012, pp. 1581–82 (1942) and Restatement (Second) of Agency § 217B(2) (1958)).

[25] *Id*. at 903–04 (emphasis added; quotations and citations omitted).

[26] *Id*. at 904 (emphasis added; citations omitted).

10

*Greco*'s characterization of the physician's statute-of-limitations dismissal as a determination of his liability "on the merits" was inspired by § 217B(2) of the Restatement (Second) of Agency. Section 217B(2)—a provision that was not carried forward in the Third Restatement published in 2005[27]—states that "[i]f the action is based solely upon the tortious conduct of the agent, judgments *on the merits* for the agent and against the principal, or judgments of varying amounts for compensatory damages are erroneous."[28] Because *Greco* concluded that the dismissal of the physician on statute-of-limitations grounds was a judgment on the merits for the physician, the application of § 217B(2) resulted in the "failure of Greco's vicarious claims on the theory of *respondeat superior* against [the physician's] employers . . . ,"[29] there being "no vicarious liability to be imputed to [them]."[30]

Thus, *Greco*'s reasoning, to the extent that it substituted the statute-of-limitations dismissal of the physician for an assessment of the physician's culpability, is in tension with itself. Having announced that "the alleged *negligence* of the employee, who is a health care provider, must be the focus of any inquiry into

---

[27] *See* Restatement (Third) of Agency Par. Table (2006).
[28] Restatement (Second) of Agency § 217B (1958) (emphasis added).
[29] *Greco*, 619 A.2d at 904.
[30] *Id.*

the vicarious liability of the employer of that health care provider under the doctrine of *respondeat superior*,"[31] the Court shifted its gaze from the employee's negligence/culpability and fixed its gaze on the employee's dismissal on procedural grounds.[32] And since *Greco* also appears to run counter to the principle underlying *Fields*, a re-examination of *Greco's* application of § 217B(2) is appropriate.

### 1. Meaning of "on the merits"

We note that, under Superior Court Rule of Civil Procedure 41, "[u]nless the Court in its order for dismissal otherwise specifies, a dismissal under . . . [Rule 41(b)] and any dismissal not provided for in this Rule, other than a dismissal for lack of jurisdiction, for improper venue, or for failure to join a party under Rule 19, operates as an adjudication *on the merits*."[33] Thus, the Superior Court's characterization of the dismissal of the Doctors as "on the merits," a characterization that underpinned its application of *Greco*, finds support in Rule 41.[34] But our review of traditional *respondeat superior* principles leads us to conclude that § 217B's "on the merits" language was not intended to encompass procedural dismissals that do not adjudicate

---

[31] *Id.* (emphasis added).

[32] *Id.*

[33] Super. Ct. Civ. R. 41(b) (emphasis added).

[34] In the Superior Court's defense, although Verrastro argued in her response to Bayhealth's summary judgment motion that "the decision dismissing the [Doctors] was made strictly on technical and procedural grounds and had nothing to do with the merits of the alleged medical negligence," A305–06, neither party cited *Fields* or undertook an extensive analysis of *Greco's* implications.

12

the wrongfulness of the agent's conduct. Instead and in context, we believe that the phrase "judgment on the merits" in § 217B(2) means judgment on the merits *of the conduct*, that is, a judgment finding that the employee is not culpable.

This conclusion is consistent with *Fields* and the notion that "the crux of respondeat superior liability is a finding that the employee was negligent"[35] and not whether the injured person has a right of action against the employee. Likewise, this approach is consistent with how procedural dismissals are treated in the *res judicata* context, where "[a] judgment against the injured person that bars him from reasserting his claim against the defendant in the first action extinguishes any claim he has against the other person responsible for the conduct *unless . . . [t]he judgment in the first action was based on a defense that was personal to the defendant* in the first action."[36] Thus, a dismissal can be "on the merits" as it concerns the viability of another suit against the dismissed party without having a collateral effect on a potentially responsible third party.

Section 217B(2), in our view, was meant to prevent substantively inconsistent outcomes and not meant to reach the issue of whether procedural defenses run from an agent to a principal. For example, § 217 of the same Restatement states that "[i]n an action against a principal based on the conduct of a servant in the course of

---

[35] *Hughes v. Doe*, 639 S.E.2d 302, 204 (Va. 2007).
[36] Restatement (Second) of Judgments § 51 (1982).

13

employment . . . *[t]he principal has no defense because of the fact that the agent had an immunity from civil liability* as to the act."[37]  The only consistent reading of the two sections of the Restatement is to say that, even if a case against an agent were subject to an immunity defense as in *Fields*, that immunity would not accrue to the benefit of the principal except to the degree that the immunity applies equally to both principal and agent regardless of any principal-agent relationship.  In this regard, we view a time bar as analogous to a claim of immunity in that neither indicates the absence of wrongdoing, but only that the wrongdoer may not be held liable.  In the *respondeat superior* context, an agent's assertion of immunity does not depend on his lack of culpability, and the same can be said of any statute-of-limitations defenses that might be applicable.

We believe that this application of pertinent *respondeat superior* principles serves the purpose of that doctrine more faithfully than does *Greco*'s conclusion that, if a claim against the agent is time-barred, the principal is relieved of responsibility even though a timely claim has been made against the principal.  It bears noting that, in contrast to the claims against Bayhealth here, none of the claims against the physicians in *Greco* were timely filed; in other words, UD need not have piggy-backed on the physician's time-bar defense.  And for that reason, we do not question

---

[37] Restatement (Second) of Agency § 217 (1958); *see also* Restatement (First) of Judgments § 99 (1942) (cited by Restatement (Second) of Agency § 217B cmt. c (1958)).

14

the ultimate result in *Greco*. But to the extent that *Greco* is read—as the Superior Court did in this case—to eradicate otherwise timely claims against a principal because claims based on the same facts would be time-barred if made against the principal's agent, we overrule it. We hold that, in a negligence action against a principal based on the doctrine of *respondeat superior*, the dismissal of the agent on defenses personal to the agent does not automatically eliminate the principal's vicarious liability.

### 2. Avoidance of absurd results

*Greco*'s treatment of a statute-of-limitations dismissal of a tort action against an agent as a merits-based determination that bars the prosecution of the action against the principal under the doctrine of *respondeat superior* can lead to absurd results. For instance, as recognized by the Restatement (Second) of Judgments, the general rule is that the employee is not even a necessary party to an action against the employer based on *respondeat superior*:

> [B]oth the primary [tortfeasor] and the person vicariously responsible for his conduct are ordinarily subject to liability to the injured person. In some situations, the vicariously responsible person is liable only if the liability of the primary obligor is established; this is true, for example, of an insurer's liability for the acts of the insured. Ordinarily, however, the person vicariously responsible may be held liable even though the liability of the primary obligor has not been established. *Moreover, in some situations the person vicariously responsible may be held liable even though an action cannot be maintained against the primary obligor. . . . [U]nder prevailing procedural rules the injured person ordinarily is not required to join*

*both and may decide to bring suit in the first instance against only one of them.*[38]

Here, Bayhealth has acknowledged that Verrastro need not have sued the Doctors.[39] To allow Verrastro's unnecessary choice to belatedly sue the Doctors to eviscerate her otherwise-viable claim against their employer would be to condone an absurd—and, we suggest, unintended—result.

A yet even more bizarre result could be in store if inordinate emphasis is placed on the viability of the cause of action against the agent as opposed to the viability of the claim that the agent acted tortiously. In particular, the literal application of the language in *Greco* that it is the viability of the cause of action—and not the agent's negligence—that breathes life into the claim against the principal would logically justify a dismissal of the principal even in an action in which the agent was not named once the limitation period applicable to the agent runs. Such results make no sense to us and weigh heavily in favor of our reconsideration of *Greco*.

We also think that allowing a plaintiff to proceed against an employer where the statute of limitations has run on the plaintiff's suit against the employee but not

---

[38] *Id.* § 51, cmt. a (emphases added); *see also* Restatement (First) of Judgments § 99 (1942) (cited by Restatement (Second) of Agency § 217B cmt. c (1958)); *Appriva S'holder Litig. Co., LLC v. EV3, Inc.*, 937 A.2d 1275, 1286 (Del. 2007); Super. Ct. R. 19; Fed. R. Civ. P. 19; *Lomando v. United States*, 667 F.3d 363, 384 (3d Cir. 2011).

[39] Oral Arg. 15:06–13 (Dec. 5, 2018) ("We agree that you don't have to sue the individual physicians or agents of the employer . . . .").

on the suit against the employer is consistent with the rationale underlying the doctrine of *respondeat superior*. In particular, it is the negligence of the employee that is imputed to the employer, not the employee's liability. The principle was faithfully observed in *Fields*,[40] and *Greco* itself recognized that "the negligence of [the] employee . . . must be the focus of any inquiry into the vicarious liability of the employee . . . under the doctrine of *respondeat superior*."[41]

### 3. Other jurisdictions

Although the case law from our sister states appears to be split, the jurisprudential trend is tending toward the rule we adopt today.[42] For example, in

---

[40] We note that *Greco* cautioned the reader to "*see* interspousal immunity exception in *Fields v. Synthetic Ropes*." *Greco*, 619 A.2d at 903 (citation omitted). But we do not view *Fields* as being limited to the interspousal immunity context. Rather, we see it as a specific application of the more general principle that a judgment has no preclusive effects where that judgment "was based on a defense that was personal to the defendant." Restatement (Second) of Judgments § 51 (1982); *see also* Restatement (Second) of Agency § 217 (1958).

[41] *Greco*, 619 A.2d at 903.

[42] *See, e.g.*, *Hook v. Trevino*, 839 N.W.2d 434, 441 (Iowa 2013) (state not immune from liability despite personal immunity of volunteer employee); *Hughes v. Doe*, 639 S.E.2d 302, 204 (Va. 2007); *Cohen v. Alliant Enterprises, Inc.*, 60 S.W.3d 536, 538 (Ky. 2001); *Leow v. A & B Freight Line, Inc.*, 676 N.E.2d 1284, 1289 (Ill. 1997); *Byrd v. J Rayl Transp., Inc.*, 106 F. Supp. 3d 999, 1001 (D. Minn. 2015); *Juarez v. Nelson,* 61 P.3d 877, 886 (N.M. Ct. App. 2002) ("Defendant has not cited, and we are not aware of, any New Mexico case applying the principle that the exoneration of the servant operates in tort to exonerate the principal of vicarious liability where the employee has been exonerated by a statute of limitations") (internal quotation marks omitted), *overruled on other grounds by Tomlinson v. George,* 116 P.3d 105 (N.M. 2005); *Gallegos v. City of Monte Vista*, 976 P.2d 299, 301 (Colo. App. 1998); *Vern J. OJA & Assoc. v. Washington Park Towers, Inc.*, 549 P.2d 63, 67 (Wash. App.), *aff'd*, 569 P.2d 1141 (Wash. 1977); *see also Women First Ob/Gyn v. Harris*, 161 A.3d 27, 45 (Md. App. 2017) ("we are persuaded that the better view is that the dismissal with prejudice of a tort claim against an agent does not necessarily have the effect of rendering the vicarious liability claim against the agent's principal non-viable"); *State ex rel. Sawicki v. Lucas Cty. Court of Common Pleas*, 931 N.E.2d 1082, 1088–89 (Ohio 2010); *Stanley ex rel. Estate of Hale v. Trinchard*, 579 F.3d 515, 520 (5th Cir. 2009);

the 2004 case *Fuentes v. Brookhaven Memorial Hospital*,[43] the New York Supreme

Court, Appellate Division faced nearly the exact situation that Verrastro and

Bayhealth present to us here.  In *Fuentes*,

> the [trial court] granted [the doctor's] motion to dismiss the complaint
> insofar as asserted against him on the ground that the plaintiffs failed
> to serve a timely notice of claim upon him . . . and judgment was entered
> dismissing the complaint insofar as asserted against him. . . . However,
> the dismissal of a complaint as against one party need not be given res
> judicata effect as against another vicariously liable for the same conduct
> when the dismissal was based upon a defense that was personal to that
> party. . . . Further, the dismissal was not based upon and did not
> determine the merits of the underlying allegations of medical
> malpractice. . . . Accordingly, application of the doctrine of res judicata
> to dismiss the complaint as against [the hospital] was not warranted.[44]

The New York Appellate Division accordingly reversed the trial court's dismissal

of the case against the hospital.  Although the Superior Court did not use the words

"*res judicata*" in its ruling, it in effect applied that doctrine: it held that where a

plaintiff lost a case against a defendant, the plaintiff could not press claims based on

the same facts against another party in privity with the defendant.[45]  But, for the

---

*Davis v. Lambert-St. Louis Int'l Airport*, 193 S.W.3d 760, 765 (Mo. 2006); *Hooper v. Clements Food Co.*, 694 P.2d 943, 945 (Okla. 1985).  *But see Stephens v. Petrino*, 86 S.W.3d 836, 843 (Ark. 2002); *Al-Shimmari v. Detroit Med. Ctr.*, 731 N.W.2d 29, 37–38 (Mich. 2007).

[43] 10 A.D.3d 384 (N.Y. App. Div. 2004).

[44] *Id.* at 385–86.

[45] We think the type of preclusion applied by the Superior Court is more aptly characterized as claim preclusion and not issue preclusion.  For one, the Superior Court's analysis did not rely on *why* Verrastro's case against the doctors was dismissed; any final judgment would have sufficed. Relatedly, if Verrastro had sued Bayhealth alone, the statute of limitations as applied to the Doctors would never even have been a question of concern.  A question that would not be a factor but for a former adjudication is better conceived as a matter of claim preclusion.

reasons we have expressed, we think the approach of the New York Appellate Division is more sensible.

Finally, the recent United States Supreme Court case *Simmons v. Himmelreich*[46] is worthy of notice here. In *Simmons*, the plaintiff first filed suit against the United States on the basis that prison officials were negligent in the way they handled his housing arrangements. That claim was dismissed under an exception in the Federal Tort Claims Act. The plaintiff then sued the individual prison officials, and the Supreme Court held that the individual suits could proceed despite the dismissal of the suit against the United States.[47] *Simmons* reasoned that the judgment bar against the United States "has no logical bearing on whether an employee can be held liable instead." It furthermore noted that holding otherwise would "yield the strange result" that "the viability of a plaintiff's meritorious suit against an individual employee [might] turn on the order in which the suits are filed."[48] Although *Simmons* dealt with an employee's liability where the employer had been held immune, we think the same reasoning and concerns apply in reverse.

## IV. CONCLUSION

Accordingly, the Superior Court's entry of summary judgment in Bayhealth's favor should not stand; we so hold not because the court misapplied *Greco*, but

---

[46] 136 S.Ct. 1843 (2016).
[47] *Id.* at 1850.
[48] *Id.*

because *Greco*'s reasoning on the point relevant to this case has lost its persuasive force.[49] Therefore, we **REVERSE** the judgment of the Superior Court and **REMAND** for a trial or other proceedings consistent with this opinion.

---

[49] *See Travelers Indem. Co. v. Lake*, 594 A.2d 38, 46 (Del. 1991) ("A court clearly has the authority, indeed the responsibility, to overrule its own common law decisions when they lose their legal vitality.").